## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRI TIMKO; ANTHONY ROBINSON;** | : | |
| **and STEPHANIE DARNELL,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No.:**  2:23-cv-1307 |
| **v.** | : | |
| | : | |
| **NSPA LOUNGE LLC d/b/a DAYS INN;** | : | |
| **NSPA SUITES LLC; MILAN, LLC d/b/a** | : | |
| **MOTEL M; YADWINDER SINGH a/k/a** | : | |
| **JERRY KING; BALJINDER KAUR a/k/a** | : | |
| **ROBIN a/k/a DIPPY; HIMANSHU BHATIA** | : | |
| **a/k/a HIMAN; DIPTI BHATIA f/k/a DIPTI** | : | |
| **MAISURIA; WYNDHAM HOTELS AND** | : | |
| **RESORTS, INC.;** | : | |
| | | |
| **Defendants.** | | |

## COMPLAINT

Plaintiffs, Terri Timko, Anthony Robinson, and Stephanie Darnell (hereafter, "Plaintiffs"), by and through the undersigned counsel, J.P Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire and Filipe F. Franca, Esquire, *Pro Hac Vice,* hereby file this Complaint against Defendants, NSPA LOUNGE LLC d/b/a DAYS INN, NSPA SUITES LLC, YADWINDER SINGH a/k/a JERRY KING, BALJINDER KAUR a/k/a ROBIN a/k/a DIPPY, HIMANSHU BHATIA a/k/a HIMAN, DIPTI BHATIA f/k/a DIPTI MAISURIA (hereafter, "Days Inn Defendants"), and WYNDHAM HOTELS AND RESORTS, INC. (hereafter, "Wyndham"), and state as follows:

## PARTIES

1.    Terri Timko is an adult individual.

2.    Anthony Robinson is an adult individual.

3.    Stephanie Darnell is an adult individual.

4.     NSPA Lounge LLC d/b/a Days Inn is a Pennsylvania Limited Liability Company with an address of 127 W. Byers Ave., New Stanton, PA 15672.

5.     NSPA Suites LLC is a Pennsylvania Limited Liability Company with an address of 127 W. Byers Ave., New Stanton, PA 15672.

6.     Milan, LLC is a West Virginia Limited Liability Company that owns and operates Motel M, which is located at 187 W. Fair St., Lewisburg, WV 24901 (hereafter, "Motel M").

7.     Yadwinder Singh a/k/a Jerry King is an adult individual whose permanent address is 319 Glenn Fox Road, New Stanton, PA 15672 (hereafter, "Mr. Singh").

8.     Baljinder Kaur a/k/a Robin a/k/a Dippy is an adult individual whose permanent address is 319 Glenn Fox Road, New Stanton, PA 15672 (hereafter, "Ms. Kaur").

9.     Himanshu Bhatia a/k/a Himan is an adult individual with an address of 253A Lafayette Rd. Apt. 3D1, Edison, NJ 08837 (hereafter, "Mr. Bhatia").

10.    Dipti Bhatia f/k/a Dipti Maisuria is an adult individual whose permanent address is 253A Lafayette Rd., Apt. 3D1, Edison, NJ 08837 (hereafter, "Ms. Bhatia").

11.    Wyndham Hotels & Resorts, Inc. is a publicly traded corporation located at 22 Sylvan Way, Parsippany, NJ 07054.

## JURISDICTION AND VENUE

12.    Jurisdiction is proper as Plaintiff brings this lawsuit under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA" – 18 U.S.C. §§ 1581 *et seq.*), the Racketeer Influenced and Corrupt Organizations Act ("RICO" – 18 U.S.C. §§ 1961 *et seq.*), the Pennsylvania Human Trafficking Law ("PHTL" – 18 Pa. C.S. § 3001 *et seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Fair Labor Standards Act of 1938 ("FLSA" – 29 U.S.C. §§ 201 *et seq.*), the Pennsylvania Wage Payment and Collection

1

Law ("WPCL" – 43 Pa. 329 *et seq.*), the Pennsylvania Minimum Wage Act ("PMWA" – 43 P.S. §§ 333.101 *et seq.*), the Fair Debt Collections Practices Act ("FDCPA" – 15 U.S.C. § 1692 *et seq.*), the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA" – 73 P.S. § 2270.1 *et seq.*), and common law Unjust Enrichment.

13.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

14.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) and (b)(2) given a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

## FACTUAL ALLEGATIONS

### A. The Trafficking Victims Protection Act and the Pennsylvania Human Trafficking Law

15.     The Trafficking Victims Protection Act is a federal statute enacted in 2000 to combat trafficking in persons. The TVPA established the Office to Monitor and Combat Trafficking in Persons, which publishes the Trafficking in Persons report ("TIP Report") each year, and the Interagency Task Force to Monitor and Combat Trafficking, which assists in the implementation of the TVPA. The Trafficking Victims Protection Reauthorization Act of 2003 established Human Trafficking as a chargeable crime under RICO and provided a civil right of action for trafficking victims. The Trafficking Victims Protection Reauthorization Act of 2008 added the "Benefitting From" prong to the TVPA, which allowed for civil actions against corporations and individuals who benefit financially from ventures that engage in human trafficking.

16.     The TVPA's stated purposes are to combat trafficking in persons, to ensure just and effective punishment of traffickers, and to protect victims. 22 U.S.C. § 7101(a). Congress found that at least 700,000 persons are trafficked within and across international borders annually, and that approximately 50,000 women and children are trafficked into the United States each year. 22 U.S.C. § 7101(b)(1). Individuals are often trafficked by force, fraud, or coercion. 22 U.S.C. § 7101(b)(2).

17.     Congress also found that traffickers target primarily individuals disproportionally affected by poverty, lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin, 22 U.S.C. § 7101(b)(4); that trafficking in persons substantially affects interstate commerce and has an impact on the nationwide employment network and labor market, 22 U.S.C. § 7101(b)(12); that involuntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion, 22 U.S.C. § 7101(b)(13); that human trafficking is abhorrent to the principles upon which the United States was founded, 22 U.S.C. § 7101(b)(22); and that the United States and the international community agree that trafficking in persons involves grave violations of human rights and is a matter of pressing international concern, 22 U.S.C. § 7101(B)(23).

18.     Although not exhaustive, this list of Congressional Findings evidences Congressional intent that violations of the TVPA are of great public concern.

19.     The Pennsylvania Human Trafficking Law was enacted in 2014, as part of a nationwide effort to secure the desired goals of the TVPA of protection, prevention, and prosecution in human trafficking cases.

**B.  The Days Inn in New Stanton, PA and Motel M in Lewisburg, WV are involved in a multi-state Human Trafficking scheme**

20.     Upon information and belief, Terri Timko and Anthony Robinson are only two of multiple individuals that the Days Inn in New Stanton, PA ("New Stanton Days Inn") has been hiring under the same or similar debt arrangement.

21.     Upon information and belief, the individuals working for New Stanton Days Inn under the same or similar debt arrangement were asked to write their hours down in a three-ring binder which was kept in the back office.

22.     Upon information and belief, aside from that three-ring binder, there was no other paperwork given to Plaintiffs regarding the hours they worked for New Stanton Days Inn.

23.     Upon information and belief, New Stanton Days Inn is one of multiple hotels around the country who are involved in a human trafficking scheme to coerce vulnerable individuals into working under debt servitude.

24.     Among these stands Motel M, which is owned and operated by Defendants Himanshu Bhatia and Dipti Bhatia in Lewisburg, West Virginia.

25.     Upon information and belief, Mr. Singh and Mr. Bhatia have an agreement to share trafficked individuals for hotel labor between their hotels.

**C.  Plaintiff Terri Timko is recruited into labor trafficking by New Stanton Days Inn**

26.     On or about March 2022, Terri Timko. was experiencing homelessness and attempted to find lodging at the Welcome Home homeless shelter in Greensburg, PA.

27.     The shelter was full, but Ms. Timko was directed to the Days Inn on 137 W. Byers Ave., New Stanton, PA, because she was told that the owner had previously allowed employees to work in exchange for a room.

28.     When Ms. Timko arrived at the New Stanton Days Inn, she met with the owner, Yadwinder Singh (hereafter, "Mr. Singh"), who agreed to give her employment in exchange for a room for herself, her son, and their two dogs.

29.     Mr. Singh introduced himself to Ms. Timko as "Jerry King."

30.     Based on their conversation, Ms. Timko was led to believe that the price of the room would be deducted from her paycheck, and that she would have enough left over to pay for her and car and other expenses.

31.     Ms. Timko started working that same day.

32.     Ms. Timko was scheduled to work for 7 days a week, 6 hours per day, and at a rate of $8 per hour as a front desk clerk.

33.     Ms. Timko generally worked from 6am – 12pm every day with Mr. Singh's wife, Baljinder Kaur (hereafter, "Ms. Kaur"), until Mr. Singh took over the front desk duties at 12pm.

34.     Ms. Kaur was introduced to Ms. Timko as "Robin."

35.     Ms. Timko was promised by Mr. Singh that after one month, she would be hired as a legitimate employee and would no longer be paid "off the books."

36.     However, after 30 days Mr. Singh started making excuses as to why he was not hiring Ms. Timko as a legitimate employee, and consequently, Ms. Timko was never onboarded as an employee.

37.     As part of their agreement, Ms. Timko was to be charged $350 per week for a hotel room.

38.     After Ms. Timko accepted, Mr. Singh told her that renting a room at his Days Inn hotel was a mandatory part of her employment with New Stanton Days Inn.

**D.  Plaintiff Terri Timko becomes more indebted to New Stanton Days Inn**

5

39.     At the outset of her employment, Ms. Timko was told by Mr. Singh that he could help her if she needed any help, financially, because he was "good to his people."

40.     Mr. Singh even directed an employee, Shirley LNU, to tell Ms. Timko about how much Mr. Singh had helped her financially by offering her loans.

41.     However, due to the fact that Ms. Timko had a strict work schedule controlled by Mr. Singh, she could not make more money than was being deducted for her hotel room.

42.     Due to the deficit, Ms. Timko started borrowing money from Mr. Singh to pay for her car expenses, groceries, and other expenses.

**E.  New Stanton Days Inn imposes unreasonable restrictions**

43.     New Stanton Days Inn told Ms. Timko that she was not allowed to live anywhere else but at the hotel, or else she would be fired.

44.     New Stanton Days Inn told Ms. Timko that she was not allowed to associate with coworkers or guests, even off-duty and off-property.

45.     One time, Mr. Singh reprimanded Ms. Timko for speaking with an elderly guest, Ms. Nancy LNU, who invited Ms. Timko to sit with her while she ate her breakfast outside. Mr. Singh saw Ms. Timko sitting with the guest through the hotel's security cameras.

46.     Mr. Singh routinely watched the security cameras and would call Ms. Timko to reprimand her if she associated with anyone.

47.     Another time, Mr. Singh reprimanded Ms. Timko for speaking with her coworker, Ms. Darnell. Mr. Singh was in India for vacation at the time and told Ms. Timko he had seen her talking to her coworker on the security cameras.

48.     New Stanton Days Inn told Ms. Timko that she was not allowed to take smoking breaks with other employees.

49.     New Stanton Days Inn told Ms. Timko that she was not allowed to have any other jobs, or she would be fired.

50.     One time, when Ms. Timko told Mr. Singh that she was going to apply at the business across the street for some extra income, Mr. Singh stated, "you're too stupid to work two jobs…if you get another job, you can't work here."

51.     New Stanton Days Inn did not allow Ms. Timko to have any visitors. She was expected to go off-campus if she wanted to meet with anyone, even family members.

**F. New Stanton Days Inn's verbal abuse, inappropriate actions, and abuse of legal process towards Terri Timko**

52.     Mr. Singh would make subtle sexual advances towards Ms. Timko throughout her employment at New Stanton Days Inn.

53.     Mr. Singh would yell at Ms. Timko in front of New Stanton Days Inn's guests.

54.     One time, when Ms. Timko was having a guest sign their Weekly Agreement, which required an upfront deposit for bookings of over seven (7) days, Mr. Singh exclaimed, "What are you making him sign!? Are you fucking stupid!? He booked online!"

55.     Another time, when Ms. Timko was in the process of booking a guest at the front desk, Mr. Singh saw her wearing socks with slides and yelled at her, "What the fuck are you wearing?! You can't wear that, go home and fucking change!"

56.     Ms. Timko was never made aware previously that certain policies such as the Weekly Agreement did not apply to guests who booked online through Wyndham's website.

57.     Mr. Singh would search through Ms. Timko's belongings without consent.

58.     One day, a female coworker, Naomi LNU, told Ms. Timko that she had woken up to Mr. Singh sitting silently in her room watching her.

59.     At approximately three (3) different times throughout her employment, Mr. Singh instructed Ms. Timko to pack her things and leave, only to later stop her and tell her that she could stay.

60.     Once Ms. Timko was indebted to the Days Inn, Mr. Singh would continually threaten to call the police and have her arrested for her unpaid debts.

61.     Mr. Singh would tell Ms. Timko that it would be a felony for her not to pay her debts to him.

62.     Ms. Timko relied on Mr. Singh's threats and misstatement of the law and continued to attempt to work off her debt.

**G.  Terri Timko attempts to work off her debt**

63.     At one point during her employment with Days Inn, Mr. Singh, Ms. Kaur, and their family went to India for vacation for a month.

64.     During that month, Ms. Timko worked upwards of 12- to 16-hour days in order to pay off her debt to New Stanton Days Inn.

65.     At the end of the month, Ms. Timko had finally managed to pay off her debt and received approximately $80 in cash.

66.     Once Mr. Singh returned, however, he once again reduced Ms. Timko's working hours to 6 hours per day.

**H.  Terri Timko escapes from New Stanton Days Inn**

67.     Toward the end of Ms. Timko's time working for New Stanton Days Inn, Ms. Kaur alleged that the New Stanton Days Inn was short $72.45.

68.     Mr. Singh accused Ms. Timko of stealing money from New Stanton Days Inn.

69.     Mr. Singh ordered Ms. Timko to get out and threatened to call the police.

70.     Ms. Timko went to her room and started packing her personal items.

71.     While packing, Ms. Timko was summoned to the front office, where she was told that she could stay if she admitted to stealing the money.

72.     Ms. Timko was told there was camera footage of her stealing the money.

73.     Ms. Timko refused to admit that she stole the money.

74.     Ms. Timko requested Mr. Singh show her the camera footage, but he never did.

75.     Mr. Singh then told Ms. Timko that she could stay.

76.     However, Ms. Timko spoke with the owner of the Knights Inn in Greenburg, PA, who agreed to give her a room on July 27, 2022 and a legitimate job starting July 28, 2022.

77.     Ms. Timko told her son about the situation and their need to leave secretively.

78.     Upon information and belief, a maintenance worker overheard Ms. Timko speaking with her son and reported the situation to Mr. Singh, because that same day, Mr. Singh asked Ms. Timko if she was going to quit.

79.     In the middle of the night, on July 27, 2022, Ms. Timko and her son wrapped their belongings in blankets and left for the Knights Inn in Greensburg, PA without giving Mr. Singh notice.

**I.   Plaintiff Anthony Robinson is recruited into labor trafficking**

80.     At all times relevant, Anthony Robinson is an African American male.

81.     Mr. Singh found Mr. Robinson while he was working at "Motel M" in Lewisburg, West Virginia.

82.     Mr. Robinson began working for Motel M approximately June 2019.

83.     At the time, Mr. Robinson had outstanding criminal warrants.

84.     The hotel owner in West Virginia, "Omar" LNU, agreed to pay Mr. Robinson in cash and off-the-books.

85.     Upon information and belief, Mr. Singh and "Omar" knew each other and communicated regarding hiring Mr. Robinson and other homeless or desperate individuals under a debt arrangement that constituted human trafficking pursuant to state and federal statutes.

86.     Upon information and belief, "Omar" is Defendant Himanshu Bhatia.

87.     While working at Motel M, Mr. Robinson witnessed other individuals working under the same debt agreement as he was.

88.     At one point, Mr. Singh and Mr. Bhatia traded Mr. Robinson so that he could work for the New Stanton Days Inn.

89.     After being transported to the New Stanton Days Inn, Mr. Robinson witnessed multiple individuals working for Mr. Singh under the same or similar debt arrangement throughout his time there also.

90.     After Mr. Robinson started working for Mr. Singh at the New Stanton Days Inn, Mr. Singh confiscated his phone.

91.     Mr. Robinson was not allowed to call his mother or his friends. Mr. Robinson bought multiple cell phones throughout his time at the New Stanton Days Inn, but Mr. Singh confiscated them. Mr. Robinson was able to update his mother on the situation by sneaking phone calls while hidden from Mr. Singh.

92.     Mr. Singh did not allow Mr. Robinson to leave the hotel without supervision.

93.     Mr. Singh also charged Mr. Robinson with a mandatory $350 per week rent.

94.     Mr. Robinson's debt towards New Stanton Days Inn did not surpass how much he allegedly made while working for the hotel.

95.    At one point during his time working for New Stanton Days Inn, Mr. Robinson was arrested and taken to West Virginia for an outstanding warrant.

96.    When Mr. Robinson finished his incarceration in West Virginia, Mr. Singh picked him up and transported him across state lines back to New Stanton Days Inn.

97.    Mr. Singh laid off staff during this time in order to force Mr. Robinson to do more work.

98.    Mr. Singh never increased Mr. Robinson's salary.

99.    Mr. Robinson worked over 40 hours per week.

100.    Mr. Robinson never received overtime for any hours worked over 40 hours.

101.    Mr. Robinson was additionally instructed to do personal work for Mr. Singh's family; such tasks included cleaning Mr. Singh's residence and horse stalls.

102.    Mr. Singh bought his personal home at 319 Glenn Fox Road, New Stanton, PA 1567 on July 8, 2019.

103.    Mr. Singh's horse's name is George.

104.    Mr. Singh refused to pay Mr. Robinson for any work done during his time working for New Stanton Days Inn.

105.    Mr. Singh threatened Mr. Robinson with calling the police if he did not remain working for Mr. Singh.

106.    Mr. Singh threatened Mr. Robinson with calling the police if he left New Stanton Days Inn without supervision.

107.    Mr. Singh threatened to slap Mr. Robinson at various times throughout his employment.

108.   Mr. Singh did not allow Mr. Robinson to go to church during his time at New Stanton Days Inn.

109.   Mr. Singh did not allow Mr. Robinson to do cookouts or engage in any other activity with the employees and other workers living at the New Stanton Days Inn.

110.   Mr. Singh instructed Mr. Robinson to stay inside his room when he was not working.

111.   Mr. Singh did not allow Mr. Robinson to speak with any of the guests, employees, or coworkers working under a same or similar debt arrangement.

112.   Additionally, Mr. Singh has stated to Ms. Timko that, "it's not that I'm prejudice, I've never met a black man that hasn't robbed someone."

113.   Additionally, Ms. Timko has witnessed Mr. Singh rip up applications from black applicants.

114.   Upon information and belief, New Stanton Days Inn does not hire black employees due to their race.

115.   Upon information and belief, Mr. Singh subjected Mr. Robinson to human trafficking partly due to his race.

116.   On June 1, 2022, Mr. Robinson was kicked out of the hotel for unknown reasons. Ms. Kaur personally locked him out of his room and did not allow him to remove his belonging. Ms. Robinson was told to leave because the police had been called to arrest him. Upon information and belief, Mr. Singh and Ms. Kaur kept Mr. Robinson's personal belongings.

117.   On June 23, 2023, Mr. Robinson received a phone call from Mr. Singh but did not answer it.

**J.  Plaintiff Stephanie Darnell**

118.   Stephanie Darnell began employment with the New Stanton Days Inn's predecessor in March 2011.

119.   On June 29, 2015 a deed was conveyed from New Stanton Hospitality Corp. to NSPA Suites LLC in exchange for consideration of $4,250,000.00.

120.   After ownership was transferred, Ms. Darnell continued working for the New Stanton Days Inn.

121.   Ms. Darnell was a Head Housekeeper for New Stanton Days Inn, earning $12 per hour.

122.   Ms. Darnell worked an average of 40 hours per week. Her schedule depended on the number of rooms that needed cleaning, therefore she often worked more than 40 hours per week, especially during the summer months.

123.   Mr. Singh would short Ms. Darnell on her hours occasionally.

124.   Ms. Darnell would also be instructed to do odd jobs around the hotel due to the lack of staff, which included maintenance and other tasks unrelated to housekeeping. Ms. Darnell was not compensated for the extra job duties she undertook for New Stanton Days Inn.

125.   Sometime during the summer of 2019, Ms. Darnell noticed that she was not being paid one-and-a-half time her base rate for overtime worked.

126.   Ms. Darnell reported the lack of overtime pay to Mr. Singh, who proceeded to make excuses regarding why he was not paying overtime at a rate one-and-a-half times her base hourly rate.

127.   Mr. Singh also took vacation pay from Ms. Darnell and other employees.

128.   Ultimately, Ms. Darnell was never paid the overtime rate for all hours worked over 40 hours per week.

129.    Additionally, Ms. Darnell never received human trafficking training while being employed at the New Stanton Days Inn.

130.    Ms. Darnell has witnessed multiple individuals across multiple years working in exchange for rooms at the New Stanton Days Inn.

131.    On or about November 2022, Mr. Singh terminated Ms. Darnell's employment because he "didn't have any work" for her.

132.    Thereafter, Ms. Darnell filed an unemployment claim. Mr. Singh refused to write a termination letter or cooperate with the agency overseeing her claim.

**K. Wyndham was on notice that human trafficking abuses were commonplace across its locations nationwide.**

133.    Founded in December 2007 by the Polaris Project, the National Human Trafficking Hotline has received approximately 400,000 as of the date of this Complaint. Since its inception, the Hotline has identified approximately 82,301 cases of human trafficking, and 164,839 victims within those cases.[1]

134.    In July 2018, The Polaris Project came out with a report outlining the role of hotels and motels in trafficking cases. The Report noted that "Wyndham Hotel Group has been an early trailblazer in dedicating their resources and industry influence to support survivors of human trafficking."[2]

135.    In 2008, Wyndham graciously donated one million Wyndham Rewards points for Polaris to use for survivors through its Client Services Program. In 2014, Wyndham Hotel Group

---

[1] The Polaris Project, National Human Trafficking Hotline, National Statistics, https://humantraffickinghotline.org/en/statistics.
[2] Polaris, On-Ramps, Intersections, and Exit Routes: A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking, pg. 27 (July 2018), https://polarisproject.org/resources/on-ramps-intersections-and-exit-routes-a-roadmap-for-systems-and-industries-to-prevent-and-disrupt-human-trafficking/.

and Polaris announced an even further reaching partnership; as part of a joint effort, Wyndham Hotel Group and Polaris developed comprehensive training and educational tools for Wyndham hotel owners and franchisees, property-level staff, and employees at its corporate offices and call centers, to educate them about all aspects of human trafficking. Wyndham also donated one million Wyndham Rewards points to Polaris to use on the National Human Trafficking Hotline and among its vast network of anti-trafficking service providers seeking safe hotel rooms for survivors.[3]

136.    The Polaris Report recommended certain actions be taken by the hospitality industry, including formally adopting a company-wide anti-trafficking policy, donating hotel points donations and local shelter support, training staff on what to look for and how to respond, establishing a response plan involving a safe reporting mechanism, using hotel and travel booking sites for identification efforts, directly hiring employees whenever possible, working with suppliers and vendors who responsibly source their products, posting the National Human Trafficking Hotline for victim access, and advocating for appropriate hotel-related legislation.[4]

137.    On June 1, 2018, Wyndham published a Modern Slavery Statement outlining its actions and activities regarding efforts to combat slavery and human trafficking within its business and supply chain. In its Statement, Wyndham claims to have enacted policies to help eliminate the potential use of company-owned and managed properties for slavery and human trafficking. Among those efforts, Wyndham boasts it was the first hospitality company to sign the Tourism Child-Protection Code of Conduct and expects its suppliers to uphold the anti-forced labor provisions established in their Supplier Code of Conduct.[5]

---

[3] Id.
[4] Id. at 29-31.
[5] Wyndham Hotels & Resorts, Modern Slavery Statement (June 1, 2018), https://corporate.wyndhamhotels.com/modern-slavery-statement/.

138.     Wyndham's Statement also claims to have established a Corporate Social Responsibility team, encouraging anonymous tips from employees through a third-party whistleblower hotline, making the Polaris Project's hotline available to employees to speak with experts who can help them identify suspected signs of slavery and human trafficking, and encouraging the use of informational materials to franchised hotels.[6]

139.     Wyndham's Statement also claims to make available training and education about child labor and human trafficking to independently owned franchisees through webinars, seminars at its global hotel conference and online portals. Training was also made available to all Wyndham owned and operated businesses.[7]

140.     In its 2023 Environmental, Social, and Governance Report, Wyndham boasted about partnering with the American Hotel & Lodging Association to support 5-Star Promise, a voluntary commitment to enhance policies, trainings, and resources for hotel employees and guests. Wyndham further stated it works with ECPAT-USA (organization that helps protect children from the threat of sexual exploitation and trafficking), supports Polaris, and is part of the Sustainable Hospitality Alliance.[8]

141.     In 2022, Wyndham recorded approximately 75,000 training impressions viewed by corporate and managed team members and independently owned and operated franchisees. These trainings included human trafficking awareness.[9]

142.     The Human Trafficking Legal Center ("HTLC"), an organization that connects trafficking survivors with pro bono representation and advocates for accountability from

---

[6] Id.
[7] Id.
[8] Wyndham Hotels & Resorts, 2023 Environmental, Social, and Governance Report, pg. 35, https://investor.wyndhamhotels.com/esg.
[9] Id.

traffickers, governments, and corporations, published a 2021 report outlining the volume of federal cases filed alleging violations of the TVPRA. It found that as of December 31, 2021, plaintiffs had brought a total of 539 federal cases under the TVPRA, and that the number of cases rose steadily between 2003 and 2021 with more than thirteen times as many cases filed in 2021 (79) as in 2004 (6).[10]

143.   The HTCL found that 382 of the total 539 cases (72%) filed between 2003 and December 31, 2021 alleged only forced labor; Out of those, the Food Service & Hospitality sector accounted for 7.2% of the cases brought, while domestic work accounted for 21.3% of the cases brought.[11]

144.   Despite its alleged efforts to combat human trafficking, Wyndham has been involved in a string of litigation from human trafficking victims in the past few years under the following cases:

   a.   M.A. v. Wyndham Hotels & Resorts, Inc. et al., 2:19-cv-00849, filed on March 8, 2019 in the Southern District of Ohio;

   b.   A.D. v. Wyndham Hotels and Resorts, Inc., 4:19-cv-00120, filed on December 2, 2019 in the Eastern District of Virginia.

   c.   A.B. v. Hilton Worldwide Holdings Inc., et al., 3:19-cv-01992, filed on December 9, 2019 in the U.S. District Court of Oregon;

   d.   Doe #9 v. Wyndham Hotels and Resorts, Inc. d/b/a La Quinta Inn and Suites et al., 4:19-cv-05016, filed on December 27, 2019 in the Southern District of Texas.

---

[10] Merrick M. Black, Using Civil Litigation to Combat Human Trafficking: Federal Human Trafficking Civil Litigation 2021 Data Update, The Human Trafficking Legal Center, pg. 6 (December 2022).
[11] Id. at 16.

e.  B.M. v. Wyndham Hotels & Resorts, Inc., 5:20-cv-00656, filed on January 29, 2020 in the Northern District of California.

f.  S.Y. v. Wyndham Hotels & Resorts, Inc. et al., 2:20-cv-00626-JES-KCD and C.S. v. Wyndham Hotels & Resorts, Inc. et al., 2:20-cv-00639, both filed on August 19, 2020 in the Middle District of Florida;

g.  A.R. v. Wyndham Hotels & Resorts, Inc., 2:21-cv-04935 and T.P v. Wyndham Hotels & Resorts, Inc., 2:21-cv-04933, both filed on October 2, 2021 in the Southern District of Ohio.

h.  M.M. v. Wyndham Hotels & Resorts, Inc. et al., 0:20-cv-00227-ECT-BRT, filed on January 15, 2023 in the U.S. District Court of Minnesota;

i.  J.K. v. Ramada Worldwide, Inc. et al., 1:23-cv-00108, filed on January 10, 2023 in the Northern District of Georgia.

145.  The above list is not exhaustive, and Wyndham has and continues to be involved in litigation under federal and state human trafficking statutes.

**L.  Wyndham and New Stanton Days Inn had a franchisor-franchisee agreement**

146.  Upon information and belief, Wyndham had ongoing control over the daily duties of New Stanton Days Inn.

147.  Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham became a shareholder in New Stanton Days Inn.

148.  Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham required the hotel to use its customer rewards program.

149.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham provides training for hotel owners and employees, including training on human trafficking.

150.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham dictates how New Stanton Days Inn maintains its amenities.

151.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham may terminate the agreement if the hotel's amenities are not maintained to Wyndham's standards.

152.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham allows New Stanton Days Inn to use its brand for marketing purposes.

153.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham received royalties from New Stanton Days Inn for each room rented.

154.    Upon information and belief, Wyndham received royalties from the rooms in which New Stanton Days Inn housed Plaintiffs.

155.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham dictates which supplier New Stanton Days Inn must use in order to receive branded Wyndham linens for its hotel.

156.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham maintains exclusive control over the online booking process of New Stanton Days Inn.

157.    Upon information and belief, Wyndham received royalties from online bookings of rooms at New Stanton Days Inn.

158.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham has the right to send inspectors to investigate New Stanton Days Inn.

159.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham had 24/7 independent access to New Stanton Days Inn's database and electronic systems.

160.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham and New Stanton Days Inn both had 24/7 access to Wyndham's Intranet which contains resources and support for franchisees.

161.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham and New Stanton Days Inn shared a central reservation system.

162.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham must approve any new building modification or renovation.

163.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham does not allow the hotel to divert any business to a competitor.

164.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham requires the hotel to comply with its Systems Standards, which includes specific approved vendors, suppliers, and hardware technology requirements, among other things. The System Standards control and establish requirements for all aspects of New Stanton Days Inn's electronic systems.

165.    Upon information and belief, as part of its franchise agreement with New Stanton Days Inn, Wyndham is able to terminate the franchise agreement unilaterally.

**M. Wyndham and New Stanton Days Inn sever ties**

166.    Upon information and belief, a Wyndham representative named Kathy LNU spoke to New Stanton Days Inn via phone regarding Mr. Singh overcharging guests.

167.    Upon information and belief, Wyndham complained to New Stanton Days Inn that it was receiving too many complaints about false advertising.

168.    Upon information and belief, Wyndham complained to New Stanton Days Inn that it was receiving too many bad reviews.

169.    Upon information and belief, Wyndham complained to New Stanton Days Inn about residential meth addicts.

170.    At one time, Ms. Timko led a surveyor or inspector hired by Mr. Bhatia around the hotel, unbeknownst to Mr. Singh.

171.    Upon information and belief, Wyndham sent inspectors to New Stanton Days Inn while Ms. Timko and Mr. Robinson worked there.

172.    Upon information and belief, health inspectors were sent to New Stanton Days Inn while Ms. Timko and Mr. Robinson worked there.

173.    Upon information and belief, Wyndham severed their ties with New Stanton Days Inn on or around January 2023.

174.    Upon information and belief, after severing ties with Wyndham, New Stanton Days Inn only accepted cash from guests.

175.    Upon information and belief, New Stanton Days Inn has recently rebranded as a "Ramada Inn," a brand owned and franchised by Wyndham.

**PARTICIPATION THEORY**

Himanshu Bhatia and Yadwinder Singh are corporate officers, executives, and/or equity owners of Defendants NSPA Lounge LLC d/b/a Days Inn and NSPA Suites LLC. Himanshu

Bhatia and Dipti Bhatia are corporate officers, executives, and/or equity owners of Defendant

Milan, LLC d/b/a Motel M. Thus, they may be held individually liable pursuant to the well-

recognized Pennsylvania common law 'participation theory.'

## COUNT I
## LABOR TRAFFICKING
## IN VIOLATION OF THE TVPRA
*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA*
*Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a*
*Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and*
*severally)*

176.    Plaintiffs incorporate all the paragraphs above, as if fully set herein.

177.    The Trafficking Victims Protection Reauthorization Act of 2003 and the William

Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 gave victims of human

trafficking a civil remedy against both perpetrators and anyone who knowingly benefits from a

venture that they knew or should have known has engaged in human trafficking. 18 U.S.C. §

1595(a).

178.    A person commits labor trafficking under the TVPRA if they knowingly provide or

obtain the labor or services of a person by means of the "abuse, or threatened abuse of, law or legal

process." 18 U.S.C. § 1589(a)(3).

179.    The term "abuse or threatened abuse" is defined as "the use or threatened use of a

law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose

for which the law was not designed, in order to exert pressure on another person to cause that

person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c).

180.    The Defendants obtained hotel and personal labor from Ms. Timko and Mr.

Robinson.

181.     The Defendants obtained this labor by promising Ms. Timko and Mr. Robinson that they could work in exchange for a hotel room.

182.     Mr. Robinson was initially trafficked by Motel M and then transported by Mr. Singh to work at the New Stanton Days Inn.

183.     After enticing Ms. Timko and Mr. Robinson into a debt arrangement, Defendants threatened both with arrest and homelessness.

184.     Specifically, Ms. Timko was told that her debt to New Stanton Days Inn was a felony, and that she would be arrested if she did not continue to work and live at the New Stanton Days Inn.

185.     Specifically, Mr. Robinson was threatened with arrest and jail time if he did not continue to work for New Stanton Days Inn.

186.     Both Ms. Timko and Mr. Robinson worked "under the table" and were never legitimately employed by New Stanton Days Inn.

187.     Mr. Robinson was also forced to work for Mr. Singh's family, personally, as part of his work for New Stanton Days Inn.

188.     Further, Defendants transported Mr. Robinson across the state lines to engage him or continue to engage him in labor trafficking.

189.     Defendants threatened to use the law or legal process to put Plaintiffs in jail without legal justification or lawful authority.

190.     Defendants abused the law by maintaining that they could dictate Ms. Timko and Mr. Robinson's housing situation through an employment agreement.

191.     Defendants threatened to abuse the process of law by threatening to evict Ms. Timko and Mr. Robinson from their hotel rooms immediately without any notice.

23

192.    Defendants abused the law or threatened to abuse the law or process of law by restricting and attempting to restrict Ms. Timko's and Mr. Robinson's freedom of association both during and after work hours.

193.    Defendants abused the law by restricting Mr. Robinson's ability to leave the premises without a "chaperone" as a condition of his "employment" with New Stanton Days Inn.

194.    Defendants' actions were willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

195.    All of Defendants' actions were done in order to exert pressure on Ms. Timko and Mr. Robinson to keep them working under an unlawful debt arrangement.

196.    Defendants' actions were the proximate and legal cause of Plaintiffs' injures, harm and damages.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## COUNT II
## BENEFITTED FROM A HUMAN TRAFFICKING VENTURE
## IN VIOLATION OF THE TVPRA
*(Terri Timko and Anthony Robinson v. Defendant Wyndham Hotels & Resorts Inc.)*

197.    Plaintiffs incorporate all the paragraphs above, as if fully set herein.

198.    A person who has been subjected to labor trafficking may bring a civil action against whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which they knew or should have known has engaged in human trafficking. 18 U.S.C. § 1595(a).

199.    The plain text of the statute makes clear that the standard for a Beneficiary Theory of liability under the TVPRA is a negligence standard of constructive knowledge. H.H. v. G6 Hospitality, LLC, 2019 WL 6682152 (S.D. Ohio 2019) (*citing* M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019)).

200.    Therefore, to state a claim under the TVPRA Beneficiary Theory a plaintiff must plausibly allege that the defendant: (1) knowingly benefitted; (2) from taking part in a common undertaking or enterprise involving risk and potential profit; (3) that undertaking or enterprise violated the TVPRA as to the plaintiff; and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. Doe # 1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021).

201.    Pursuant to Wyndham's franchise agreement with the New Stanton Days Inn, Wyndham receives royalties from every room rented at the New Stanton Days Inn, including from the mandatory renting of Ms. Timko's and Mr. Robinson's hotel rooms, thereby benefitting from the hotel. Wyndham also benefitted from the countless number of rooms that Ms. Timko booked for the hotel.

202.    Wyndham used its Days Inn brand to market and legitimize the New Stanton Days Inn to potential guests, thereby driving guests to patronize New Stanton Days Inn and increasing its own revenue from the hotel.

203.    Additionally, Wyndham benefitted from cost-cutting measures by New Stanton Days Inn such as laying off multiple employees due to free labor obtained from Mr. Robinson and Ms. Timko. Wyndham also benefitted from the guest experience and positive reviews created, in part, by Ms. Timko and Mr. Robinson's work.

204.    The New Stanton Days Inn is a common undertaking or enterprise because it involves risk and potential profit. Wyndham and the New Stanton Days Inn have a mutual financial interest from the continued operation and management of the hotel.

205.    As argued above, the Days Inn Defendants violated the TVPRA as to Plaintiffs.

206.    Based on Wyndham's control over the daily ongoing operations of the New Stanton Days Inn, Wyndham knew or should have known that the Days Inn in New Stanton, PA was trafficking its workers.

207.    The trafficked individuals at the New Stanton Days Inn were not allowed to speak with guests or each other while working at the hotel, so Wyndham employees visiting the hotel did or should have noticed the demeanor of the trafficked individuals.

208.    Wyndham should have noticed that the New Stanton Days Inn drastically reduced its workforce since it had access to the hotel's databases, and was receiving increased profit from New Stanton Days regardless of the drastic employee changes.

209.    Wyndham scrutinized the New Stanton Days Inn multiple times for non-compliance with their requirements.

210.    Wyndham sent surveyors and inspectors to New Stanton Days Inn during Plaintiffs' employment at the hotel. Wyndham's employees are trained to detect and identify signs of human trafficking.

211.    Plaintiffs spent the entirety of their times renting out the same rooms without any rotation.

212.    Ms. Timko and Mr. Robinson were not allowed to speak with guests or coworkers. Guests and inspectors would have seen avoidant body language from either, including avoidance of eye contact.

26

213.    Mr. Singh also yelled at Plaintiffs while using profanity in front of guests. Mr. Singh's aggression should have tipped off guests and inspectors that something was not above board.

214.    The employees at New Stanton Days Inn knew about the individuals working under the unlawful debt arrangement. Upon information and belief, Wyndham representatives spoke with New Stanton Days Inn employees while Ms. Timko and Mr. Robinson worked at the hotel.

215.    Wyndham chose willful blindness regarding the illegal activities happening at the New Stanton Days Inn.

216.    Additionally, notably, Wyndham took action to investigate complaints of misrepresentation and overcharging at New Stanton Days Inn, and should have noticed the signs of trafficking being committed by its own franchisee.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

### COUNT III
### VICARIOUS LIABILITY FOR HUMAN TRAFFICKING
### IN VIOLATION OF THE TVPRA
*(Terri Timko and Anthony Robinson v. Defendant Wyndham Hotels & Resorts Inc.)*

217.    Plaintiffs incorporate all the paragraphs above, as if fully set herein.

218.    The TVPRA does not address the issue of indirect or vicarious liability. A.B. v. Hilton Worldwide Holdings Inc., 484 F. Supp. 3d 921 (D. Or. 2020).

219.    For a franchisor in Pennsylvania, vicarious liability hinges on evidence of franchisor control over both the result and manner of the franchisee's day-to-day operations.

Galeone v. Rodeway Inn Center City, 260 A.3d 160 (Pa. Super. 2021) (citing Myszkowski v. Penn Stroud Hotel, 634 A.2d 622, 628 (Pa. Super. 1993)).

220.    Wyndham controlled the ongoing, day-to-day operations of the New Stanton Days pursuant to its franchise agreement.

221.    Wyndham is vicariously liable for the labor trafficking committed against the Plaintiffs.

222.    Wyndham's action and/or inaction was the proximate and legal cause of Plaintiffs' injuries, harms, and damages.

223.    Wyndham's action and/or inaction was willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## COUNT IV
## LABOR TRAFFICKING
## IN VIOLATION OF THE PENNSYLVANIA HUMAN TRAFFICKING LAW
*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

224.    Plaintiffs incorporate all paragraphs above, as if fully set herein.

225.    A person commits labor trafficking if they knowingly subject an individual to labor servitude through any of the following means:

    a.   Abusing or threatening to abuse the legal process, § 3012(b)(4);

    b.  Taking or retaining the individual's personal property or real property as a means of coercion, § 3012(b)(5);

    c.  Engaging in unlawful conduct with respect to documents, as defined in section 3014, § 3012(b)(6);

    d.  Extortion, § 3012(b)(7);

    e.  Fraud, § 3012(b)(8);

    f.  Debt coercion, § 3012(b)(11).

18 Pa. C.S. § 3012.

226.    Section 3014 makes it unlawful for a person to knowingly destroy, conceal, remove, confiscate or possess an actual or purported passport, other immigration document, or government identification of an individual in order to prevent or restrict or attempt to prevent or restrict, without lawful authority, the ability of that individual to move or travel. 18 Pa. C.S. § 3014.

227.    Defendants abused the legal process to keep Ms. Timko and Mr. Robinson working under an unlawful debt arrangement that amounted to labor trafficking.

228.    Defendants confiscated Mr. Robinson's phone so that he would be isolated from his family or friends.

229.    Defendants used the mandatory hotel room rent to extort Ms. Timko and Mr. Robinson into continually working for Defendants.

230.    Defendants committed fraud by hiring Plaintiffs "under the table," and thereby not allowing them rights that employees normally enjoy. Upon information and belief, Defendants did not pay taxes on Ms. Timko's and Mr. Robinson's income.

231.     Defendants coerced Plaintiffs with debt and would not allow them to work enough hours to pay off their debts. Further, Defendant did not allow Plaintiffs to work any other job in order to pay off their debts.

232.     Defendants' actions were the proximate and legal cause of Plaintiffs' injures, harm and damages.

233.     Defendants' actions were willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards for any actual, compensatory, and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## COUNT V
## VICARIOUS LIABILITY FOR LABOR TRAFFICKING
## IN VIOLATION OF THE PENNSYLVANIA HUMAN TRAFFICKING LAW
*(Terri Timko and Anthony Robinson v. Defendant Wyndham Hotels & Resorts Inc.)*

234.     Plaintiffs incorporate all paragraphs above, as if fully set herein.

235.     Wyndham maintained control over the ongoing day-to-day operations of the New Stanton Days Inn pursuant to their franchise agreement.

236.     Wyndham benefitted from the franchise agreement with the New Stanton Days Inn, which included royalty payments for rooms booked and inhabited by human trafficking victims.

237.     Therefore, Wyndham is vicariously liable for the New Stanton Days Inn's labor trafficking.

238.     Wyndham's action and/or inaction was the proximate and legal cause of Plaintiffs' injuries, harms, and damages.

239.     Wyndham's action and/or inaction was willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

**COUNT VI**
**LABOR TRAFFICKING**
**IN VIOLATION OF THE RICO ACT**
*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

240.    Plaintiffs incorporate the paragraphs above, as if fully set herein.

241.    To state a claim under § 1962(c) of the RICO Act, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Magnifico v. Villanueva, 783 F. Supp. 2d 1217 (S.D. Fla. 2011) (citations omitted).

242.    "Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).

243.    "Pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

244.    To prove a pattern of racketeering activity, the plaintiffs "must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir.2010) (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)).

31

245.    "Racketeering activity" is defined as any act which is indictable under any of the following provisions of title 18, United States Code:…sections 1581-1592 (relating to peonage, slavery, and trafficking in persons). 18 U.S.C. § 1961(1)(B).

246.    Accordingly, TVP[R]A venture liability is a predicate RICO offense. Burrell v. Staff, 60 F.4th 25 (3d Cir. 2023).

247.    Both Plaintiffs were recruited and subjugated to labor trafficking, as defined under sections 1581-1592 of 18 U.S.C. § 1961(1)(B).

248.    The initial recruiting and subsequent threats that amount to abuse of legal process or law pursuant to the federal human trafficking statute satisfies the predicate RICO offense requirement.

249.    Further, denied wages for human trafficking victims also gives Plaintiffs standing under RICO. Abraham v. Singh, 480 F.3d 351 (5th Cir. 2007).

250.    Plaintiffs were denied payment for their labor.

251.    Mr. Robinson was trafficked by Defendants for approximately three to four (3-4) years, while Ms. Timko was trafficked by Defendants for approximately six (6) months.

252.    Currently, Plaintiffs can establish a human trafficking scheme spanning from approximately June 1, 2019 through July 29, 2023. However, upon information and belief, Defendants' human trafficking scheme encompassed multiple victims, in multiple states, in multiple hotels, and at multiple different times.

253.    Defendant Singh knew specifically where to go in West Virginia to recruit Mr. Robinson, and the owner of the West Virginia hotel, "Omar," allowed Mr. Singh to take Mr. Robinson with him to New Stanton, PA. Upon information and belief, "Omar" is Defendant Himanshu Bhatia, who is also a part-owner of Defendant New Stanton Days Inn.

254.    Upon information and belief, Mr. Singh also recruited other homeless individuals from the Welcome Home homeless shelter in Greensburg, PA before he recruited Ms. Timko.

255.    Upon information and belief, multiple individuals worked for New Stanton Days Inn every year being paid "under the table" for the same or similar debt arrangement that the New Stanton Days Inn had with Ms. Timko and Mr. Robinson.

256.    Upon information and belief, Mr. Bhatia also recruited other vulnerable individuals and subjected them to the same or similar debt arrangement at Motel M.

257.    Defendants' actions were the proximate and legal cause of Plaintiffs' injuries, harms, and damages.

258.    Defendants' actions were willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

<u>COUNT VII</u>
**CONSPIRACY TO COMMIT LABOR TRAFFICKING**
**IN VIOLATION OF THE RICO ACT**
*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

259.    Plaintiffs incorporate all paragraphs above, as if fully set herein.

260.    "RICO conspiracy is not a mere conspiracy to commit the underlying predicate acts. It is a conspiracy to *violate* RICO – that is, to conduct or participate in the activities of a corrupt enterprise." <u>Zavala v. Wal Mart Stores Inc.</u>, 691 F.3d 527, 539 (3d Cir. 2012) (*citing*

Salinas v. United States, 522 U.S. 52, 62 (1997)); Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990) ("[A] defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity." (emphasis added)).

261.    To be guilty of a RICO conspiracy, the conspirator must agree "to the objective of a violation of RICO; he need not agree personally to violate the statute." U.S. v. Marmolejo, 89 F.3d 1185, 1196 (5th Cir.1996); United States v. Elliott, 571 F.2d 880, 902 (5th Cir.1978) ("[T]he object of a RICO conspiracy is to violate a substantive RICO provision [], to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and not merely to commit each of the predicate crimes necessary to demonstrate a pattern of racketeering activity.")

262.    Direct evidence of a RICO agreement is not required; rather, the existence of a conspiracy "may be inferred from the conduct of the participants." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935 (11th Cir. 1997) (citing U.S. v. Church, 955 F.2d 688 (11th Cir. 1992)).

263.    "A conspirator must intend to further an endeavor which, if completed, would satisfy all the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997).

264.    The Days Inn Defendants engaged in a human trafficking scheme that encompassed multiple individuals, across multiple states, at different times.

265.    The Days Inn Defendants actively managed, operated, and benefitted from this human trafficking scheme.

266.    The Days Inn Defendants made a conscious affirmative decision to lay off legitimate personnel in order to engage in this human trafficking scheme and benefit from free labor.

34

267.    The Days Inn Defendants used debt coercion and other means of coercion in order to keep Plaintiffs and other victims working without pay.

268.    The Days Inn Defendants shared information, resources, and instructions regarding the transportation and subjugation of Mr. Robinson from Motel M to the New Stanton Days Inn.

269.    The Days Inn Defendants agreed to transport Mr. Robinson over state lines to subject him to human trafficking at the New Stanton Days Inn, and did so in furtherance of the scheme. Additionally, the Days Inn Defendants agreed to subject Ms. Timko to human trafficking at the New Stanton Days Inn.

270.    The overall objective of the human trafficking venture was to increase profits by recruiting and exploiting vulnerable individuals.

271.    The Days Inn Defendants specifically sought out homeless and incarcerated individuals because it gave them unlawful control over these individuals' labor.

272.    Defendants' actions were the proximate and legal cause of Plaintiffs' injures, harm and damages.

273.    Defendants' actions were willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## COUNT VIII
## INTENTIONAL RACE DISCRIMINATION
## IN VIOLATION OF SECTION 1981
*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a*

*Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

274.    Plaintiff incorporates all paragraphs above, as if fully set herein.

275.    Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right…to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws…as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

276.    The Days Inn Defendants subjected Mr. Robinson to employment with restrictions that greatly surpassed that of similarly-situated Caucasian employees.

277.    Initially, Motel M employed Mr. Robinson but did not pay him like similarly-situated white employees.

278.    Mr. Singh did not subject other similarly-situated Caucasian workers who were working as part of the human trafficking scheme to the same restrictions. Specifically, Mr. Robinson was the only trafficked individual at the New Stanton Days Inn who required "supervision" to leave the hotel.

279.    Additionally, Mr. Robinson was the only individual cleaning Mr. Singh's personal home and horse stables.

280.    Additionally, Mr. Robinson was intentionally given the workload of multiple employees so that the New Stanton Days Inn could become more profitable, since Mr. Robinson was not paid for his labor.

281.    Given Mr. Singh's comments and actions that evidence a negative view of African Americans, and given Mr. Singh's disparate treatment towards Mr. Robinson, Mr. Robinson was not afforded the same rights that the Days Inn Defendants afforded similarly-situated Caucasian employees and trafficked persons.

282.    Defendants' actions were the proximate and legal cause of Plaintiffs' injures, harm and damages.

283.    Defendants' actions were willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## COUNT IX
## FAILURE TO PAY OVERTIME
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT
*(All Plaintiffs v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

284.    Plaintiffs incorporate all paragraphs above, as if fully set herein.

285.    Plaintiffs are "employee[s]" as defined by 29 U.S.C. §203(e)(1) of the FLSA.

286.    Defendants are "employers" as defined by 29 U.S.C. §203(d) of the FLSA.

287.    The FLSA requires an employee that works over 40 hours to be compensated at one-and-a-half times the regular rate at which she is employed. 29 U.S.C. § 207(a)(1).

288.    When a plaintiff seeks to establish an overtime claim under the FLSA, he must "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours. *Rosario v. First Student Mgmt., LLC*, 2016 U.S. Dist. LEXIS 108172 at *20 (E.D. Pa. 2016). The plaintiff is also required to "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts," so that "allegations concerning a typical forty-hour work week include an assertion that the employee worked additional hours during such a week." Id.

289.   The FLSA also requires an employer to make, keep, and preserve certain records by employees relating to wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c).

290.   Every employer is required to maintain and preserve payroll or other records containing certain information with respect to any employee that is eligible for overtime, including, but not limited to, regularly hourly rate of pay for any workweek in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total premium pay for overtime hours, total additions to or deductions from wages paid each pay period, total wages paid each pay period, and date of payment and the pay period covered by payment. 29 C.F.R. §516.2(a).

291.   Defendant holds the burden of keeping accurate records. Acosta, 2019 WL 5197329 at 7 (citing *Dole v. Solid Waste Serv., Inc.,* 733 F.Supp. 895, 924 (E.D. Pa. 1989) (citing *Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 127-28 (3d. Cir. 1984))).

292.   While Mr. Singh was on vacation in India with his family for a month, Ms. Timko worked 12-16 hours per day, 7 days per week.

293.   Anthony Robinson worked over 40 hours per week throughout his time working for Defendants, including working after-hours at Defendants' personal home and horse stables.

294.   Stephanie Darnell worked over 40 hours per week on a consistent basis.

295.   Anthony Robinson was never paid for any of the work he did.

296.   Terri Timko was only paid for work she did while Mr. Singh was in India, however, she was not paid one-and-a-half times her base hourly salary for hours worked over 40 hours per week.

297.   Ms. Darnell was never paid at a rate of one-and-a-half times her base hourly salary for any hours worked over 40 hours per week.

298.    Defendants did not keep accurate records of Plaintiffs' time worked.

299.    The only location where Ms. Timko and Mr. Robinson could write down their hours was in a three-ring binder physically maintained in the hotel. Ms. Darnell received physical paystubs.

300.    Plaintiffs did not receive pay stubs for their work above 40 hours and were not paid one-and-a-half times their base hourly rate for those hours.

301.    Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

302.    As a direct and proximate result of the aforementioned conduct, Plaintiffs suffered actual damages.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

### COUNT X
### FAILURE TO PAY OVERTIME AND STRAIGHT TIME IN VIOLATION OF THE PENNSYLVANIA WAGE AND PAYMENT COLLECTION LAW
*(All Plaintiffs v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

303.    Plaintiffs incorporate all paragraphs above, as if fully set herein.

304.    Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

305.    The Pennsylvania WPCL, 43 P.S. §260.1 et seq., however, does not provide "a statutory definition of the term 'employee'." Frank Burns, Inc. v. Interdigital Communs. Corp, 704 A.2d 678, 680-81 (Pa Super. 1997).

306.    Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." Burns, 704 A.2d at 681.

307.    Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." Id. (citing Killian v. McCulloch, 873 F. Supp. 938, 942 (E.D. Pa. 1995)).

308.    The WPCL does not create a right to compensation, but "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997) (citing Killian v. McCulloch, 850 F.Supp. 1239, 1255 (E.D.Pa.1994).

309.    As a company conducting business and employing person(s) in the Commonwealth of Pennsylvania, Defendants are an "employer" within the definition of the WPCL, 43 Pa. C.S. §260.1a.

310.    Plaintiffs, based on the law cited above, were employees of Defendants working within the Commonwealth of Pennsylvania.

311.    The WPCL requires employers to pay all wages on regular paydays designated in advance by the employer. 43 Pa. 329(3)(a).

312.     The WPCL also requires employers to give written notice to an employee of the amount of wages the employer conceded to be due and to pay such amount without condition, in case of a dispute over wages. 43 Pa. 329(6).

313.     Plaintiffs Ms. Timko and Mr. Robinson did not receive their wages as required under the WPCL. Ms. Darnell was intentionally shorted on payment for hours worked by Mr. Singh at various times throughout her employment.

314.     Plaintiffs were never paid overtime wages as required by the WPCL.

315.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

316.     Defendants' actions were the proximate cause of Plaintiffs' harms, injuries, and damages.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## <u>COUNT XI</u>
### FAILURE TO PAY OVERTIME
### IN VIOLATION OF THE PMWA
*(All Plaintiffs v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

317.     Plaintiffs incorporate all paragraphs above, as if fully set herein.

318.     At all relevant times, Defendants constituted an employer of Plaintiffs within the meaning of the PMWA.

319.     At all relevant times, Plaintiffs constituted employees of Defendants within the meaning of the PMWA.

320.     At all relevant times, Plaintiffs were hourly, non-exempt employees of Defendants under the PMWA. As such, Defendants were required to pay Plaintiffs time-and-a-half for all hours worked in excess of 40 hours per week.

321.     Plaintiffs Ms. Darnell and Mr. Robinson often worked more than 40 hours per week for Defendants. For approximately one month, Ms. Timko worked 12-16 hours per day, 7 days per week while Mr. Singh was on vacation in India.

322.     Defendants did not pay Plaintiffs time-and-a-half for any hours worked over 40 hours per week.

323.     Upon information and belief, Defendants affirmatively chose to lay off multiple other employees due to the voluminous amount of work that Mr. Robinson was doing for Defendants, both at the hotel and at the Singh residence.

324.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

325.     Defendants' actions were the proximate cause of Plaintiffs' harms, injuries, and damages.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including awards of back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

**COUNT XII**
**FAILURE TO PAY MINIMUM WAGE**
**IN VIOLATION OF THE PMWA**

*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

326.    Plaintiffs incorporate all paragraphs above, as if fully set herein.

327.    At all relevant times, Defendants constituted an employer of Plaintiffs within the meaning of the PMWA.

328.    At all relevant times, Plaintiffs constituted employees of Defendants within the meaning of the PMWA.

329.    The PMWA requires employers to pay employees at a rate not less than the prevailing minimum wage at the time.

330.    Pennsylvania regulations state that wages paid to an employee include the reasonable cost of board, lodging and other facilities if the board, lodging or other facilities are customarily furnished by the employer to the employee; provided however, that in no event shall the cost of the deductions and allowances exceed their actual cost, exclusive of profit, to the employer. 34 Pa. Code § 231.22(a).

331.    Ms. Timko and Mr. Robinson were furnished rooms in the New Stanton Days Inn as part of their work agreement. However, hotel rooms were not customarily provided to employees of the New Stanton Days Inn.

332.    Ms. Timko and Mr. Robinson were charged more than the actual costs of the rooms, exclusive of profit. Additionally, Ms. Timko and Mr. Robinson were not given any of the benefits of a hotel room, such as access to amenities or housekeeping, and had to clean and maintain the rooms themselves.

333.     The regulations also provide that an allowance or deduction for lodging shall be permitted as part payment only when the facility affords the employee reasonable space, privacy, sanitation, heat, light, and ventilation. 34 Pa. Code § 231.22(b).

334.     Mr. Singh did not provide appropriate privacy for Mr. Timko and Mr. Robinson. Mr. Singh entered Ms. Timko's room and searched through her belongings on at least one occasion. Additionally, Plaintiffs were aware that Mr. Singh was able to and had entered the rooms of individuals working under the same or similar debt agreement previously, even at inappropriate hours.

335.     Additionally, Ms. Timko's pay was further reduced by predatory loans that Mr. Singh offered in order to help her pay for her car, groceries, and other necessary items.

336.     Although Ms. Timko received some payment for work done while Mr. Singh was in India, that was the only time Ms. Timko was paid, and the payment was not above the minimum wage rate.

337.     Mr. Robinson did not receive any payment for any services rendered while working for the New Stanton Days Inn and Mr. Singh's personal household, therefore he did not receive payment at the minimum wage rate required.

338.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

339.     Defendants' actions were the proximate cause of Plaintiffs' harms, injuries, and damages.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including an award of back pay, front pay, any

other compensatory and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

## COUNT XIII
### UNFAIR AND DECEPTIVE DEBT COLLECTION
### IN VIOLATION OF THE FDCPA AND FCEUA
*(Terri Timko and Anthony Robinson v. Defendants NSPA Lounge LLC d/b/a Days Inn, NSPA Suites LLC, Milan, LLC d/b/a Motel M, Yadwinder Singh a/k/a Jerry King, Baljinder Kaur a/k/a Robin a/k/a Dippy, Himanshu Bhatia a/k/a Himan, Dipti Bhatia f/k/a Dipti Maisuria, jointly and severally)*

340.    Plaintiffs incorporate all paragraphs above, as if fully set herein.

341.    The Fair Debt Collection Practices Act makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This include falsely representing "the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e-(2).

342.    Additionally, the FDCPA makes it unlawful the "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" and the "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e-(4) and § 1692e-(5).

343.    The Pennsylvania Fair Credit Extension Uniformity Act incorporates the federal Fair Debt Collection Practices Act. 73 P.S. § 2270.4(a).

344.    It is an unfair or deceptive debt collection act or practice under the FCEUA for a creditor to "use any false, deceptive or misleading representation or means in connection with the collection of any debt." Among these representations are included:

a. "false representation of the character, amount or legal status of any debt." 73 P.S. § 2270.4(b)(5)(ii).

b. "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, attachment or sale of any property of any person unless such action is lawful and the creditor intends to take such action." 73 P.S. § 2270.4(b)(5)(iv).

c. "[t]he threat to take any action that cannot legal be taken or that is not intended to be taken." 73 P.S. § 2270.4(b)(5)(v).

d. "The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 73 P.S. § 2270.4(b)(5)(vii).

345.   Defendants procured labor from Ms. Timko and Mr. Robinson in exchange for a permanent residence at the New Stanton Days Inn hotel. Ms. Timko and Mr. Robinson were misled regarding the length of the employment, the conditions of employment, the amount of work they would be doing, and the amount of work that Mr. Singh would allow them to do. Defendants did not disclose that there would be additional restrictions placed on Ms. Timko and Mr. Robinson in addition to the debt they would incur from their hotel rooms.

346.   New Stanton Days Inn was receiving labor in exchange for debt incurred by Ms. Timko and Mr. Robinson, therefore Defendants misled Plaintiffs regarding services rendered as payment for debt in violation of the FDCPA and the FCEUA.

347.   Additionally, after having incurred the debt, Ms. Timko and Mr. Robinson were threatened with arrest if they did not pay off said debt.

348.     Mr. Singh stated to Ms. Timko that her debt to him was a "felony" and that the police would arrest her if she did not stop working for Defendants. Mr. Robinson was also threatened with arrest and prosecution if he stopped working for Defendants.

349.     Mr. Singh also extended loans to Ms. Timko in order for her to pay her car payments and groceries. However, Mr. Singh also threatened to have Ms. Timko arrested if she did not pay off these extra loans through labor.

350.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

351.     Defendants' actions were the proximate cause of Plaintiffs' harms, injuries, and damages.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including an award of all actual, compensatory, and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

**COUNT XIV**
**QUANTUM MERUIT / UNJUST ENRICHMENT**
*(All Plaintiffs v. All Defendants)*
*(Pled in the Alternative)*

352.     Plaintiffs incorporate the allegations contained in the paragraphs above as if fully set forth at length herein.

353.     Plaintiffs had an expectation of payment from Defendants.

354.     Plaintiffs conferred a benefit upon Defendants.

355.     Defendants appreciated the benefit of Plaintiffs' time and efforts.

356.     It would be manifestly unjust if the Defendants' acceptance and retention of such benefits were permitted without payment of value to Plaintiffs.

WHEREFORE, Plaintiffs hereby request this Honorable Court consider the above and grant relief in their favor and against Defendants, including an award of all actual, compensatory, and punitive damages, costs, and reasonable attorney's fees it deems just and proper.

**JURY TRIAL DEMANDED.**

Dated: July 19, 2023

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

By: _ /s/ Joshua P. Ward_____
Joshua P. Ward, Esq.
PA ID No. 320347
**J.P. Ward & Associates, LLC**
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
(412) 545-3016
jward@jpward.com

By: _ /s/ Filipe F. Franca_____
Filipe F. Franca, Esq.
*Pro Hac Vice Forthcoming*
**J.P. Ward & Associates, LLC**
615 Channelside Dr., Ste. 207
Tampa, FL 33602
ffranca@jpward.com

*Counsel for Plaintiffs*