## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRI TIMKO; ANTHONY ROBINSON; and STEPHANIE DARNELL, | ) ) ) ) | No. 2:23-cv-1307 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| NSPA LOUNGE LLC d/b/a DAYS INN; NSPA SUITES LLC; MILAN, LLC d/b/a MOTEL M; YADWINDER SINGH a/k/a JERRY KING; BALJINDER KAUR a/k/a ROBIN a/k/a DIPPY; HIMANSHU BHATIA a/k/a HIMAN; DIPTI BHATIA f/k/a DIPTI MAISURIA; WYNDHAM HOTELS AND RESORTS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **OPINION**

Plaintiffs Terri Timko, Anthony Robinson, and Stephanie Darnell bring a mix of federal- and state-law claims against eight defendants: individual and corporate owners of a Pennsylvania hotel and a West Virginia motel, and a corporate franchisor of the Pennsylvania hotel. Plaintiffs' 14 claims can be divided into four buckets: (1) forced-labor and labor-trafficking claims brought by Plaintiffs Timko and Robinson, under federal and Pennsylvania law; (2) wage-and-hour claims brought by all Plaintiffs, under federal and Pennsylvania law; (3) Section 1981 race-discrimination claims brought by Plaintiffs Timko and Robinson; (4) and common-law equitable claims brought by all Plaintiffs.

Before the Court now are two motions to dismiss, brought by Defendant

Wyndham Hotels & Resorts, Inc. (ECF 13),[1] and Defendants Himanshu Bhatia, Dipti Bhatia, and Milan, LLC (the Motel M defendants) (ECF 23). As set forth below, the Court will **GRANT** in part and **DENY** in part Wyndham's and the Motel M defendants' motions to dismiss.

## BACKGROUND

Plaintiffs allege a multi-state forced-labor and labor-trafficking scheme between a "Days Inn" hotel in New Stanton, Pennsylvania, owned and operated by non-moving Defendants husband-and-wife Yadwinder Singh and Baljinder Kaur, co-owned by Defendant Himanshu Bhatia, and (formerly)[2] franchised by Defendant Wyndham; and a "Motel M" motel in Lewisburg, West Virginia, owned and operated by Defendant Milan, LLC, a West Virginia company owned by Defendants husband-and-wife Mr. Bhatia and Dipti Bhatia. ECF 1, ¶¶ 6, 23-25, 28, 33, 146-147, 252-256.[3]

Plaintiffs are three individuals, each of whom worked at the Days Inn, the Motel M, or both. All allege wage-and-hour claims, but only two—Ms. Timko and Mr. Robinson—have claims of forced labor and trafficking. The following facts are drawn from Plaintiffs' complaint and accepted as true.

## Ms. Timko

Ms. Timko first arrived at the New Stanton Days Inn in March 2022. *Id.* ¶¶ 26-28. At the time, she was homeless, and accepted Mr. Singh's offer to work at the

---

[1] Wyndham notes that it is incorrectly named in the complaint as Wyndham Hotels and Resorts, Inc. ECF 13, p. 10.

[2] Defendants allege that Wyndham severed its franchise agreement with the Days Inn around January 2023, but that it later re-branded as another Wyndham-owned franchise. ECF 1, ¶¶ 173, 175.

[3] Defendants NSPA Lounge LLC, NSPA Suites LLC, Yadwinder Singh, and Baljinder Kaur (the Days Inn defendants) did not move to dismiss or otherwise answer the complaint, and the Clerk of Court entered default against them. ECF 31. The Court thus doesn't address the claims against them (at Counts I, IV, and VI-XIII).

Days Inn—seven days a week, six hours a day, at $8 per hour—in exchange for housing at the hotel for herself, her son, and their dogs. *Id.* ¶¶ 28, 32. Ms. Timko understood the offer to mean that, after a trial period, she would be hired as a legitimate employee, and that lodging costs would be deducted from her paycheck with money left over to pay for her car and other expenses. *Id.* ¶¶ 30, 35.

Ms. Timko was misled. Mr. Singh and Ms. Kaur charged Ms. Timko $350 each week for lodging, and controlled her hours so that her paycheck would cover that fee alone. *Id.* ¶¶ 37, 41, 336. So Ms. Timko was forced to borrow money from Mr. Singh to pay for her expenses, making her indebted to Mr. Singh—who then threatened her with arrest over the debt to coerce her into continuing to work at the hotel. *Id.* ¶¶ 42, 60-62. Mr. Singh's and Ms. Kaur's control over Ms. Timko extended to restrictions on her work and leisure. They conditioned Ms. Timko's lodging on her continued sole employment at the Days Inn, prevented her from associating with coworkers or guests (on and off the hotel property), prevented her from having any visitors to her room, and reprimanded her if she didn't comply. *Id.* ¶¶ 38, 43-51. They also cultured a hostile work environment, which included "subtle sexual advances" from Mr. Singh, and yelling and belittling her in front of guests. *Id.* ¶¶ 52-59.

After four months of abuse, and never having been made a legitimate employee, Ms. Timko made her escape—she and her son packed up in the middle of the night on July 27, 2022, and left for another hotel in a neighboring town. *Id.* ¶¶ 36, 79.

### **Mr. Robinson**

Mr. Robinson began working for the Motel M in June 2019. *Id.* ¶ 82. Mr. Bhatia agreed to pay him off-the-books and in cash, and he too worked under a so-called "debt arrangement," though the specifics of that arrangement aren't clear. *Id.* ¶¶ 84-85, 87.

At some point, Mr. Bhatia "traded" Mr. Robinson to Mr. Singh, and Mr. Singh took Mr. Robinson to work and live at the Days Inn. *Id.* ¶¶ 88-89. There, Mr. Singh subjected Mr. Robinson to a debt arrangement like that he imposed on Ms. Timko. *Id.* ¶¶ 93-94, 337. Mr. Singh likewise confiscated Mr. Robinson's phones, and prevented him from associating with coworkers or guests, from attending church, from leaving his room when he wasn't working, and from leaving the hotel without a chaperone. *Id.* ¶¶ 90-92, 108-111. Mr. Singh also increased Mr. Robinson's work but not his pay; withheld overtime payment; forced him to work at Mr. Singh's personal residence; threatened physical violence; and threatened to have Mr. Robinson, who had outstanding warrants, arrested if he stopped working for the Days Inn—or even left the property without supervision. *Id.* ¶¶ 83, 97-101, 105-107.[4] Mr. Singh was prejudiced against Black people and trafficked Mr. Robinson, at least in part, because he is Black. *Id.* ¶¶ 80, 112-115.

For unknown reasons, Mr. Robinson was eventually "kicked out" of the Days Inn on June 1, 2022. *Id.* ¶ 116. Ms. Kaur locked him out of his room and didn't allow him to remove his personal belongings, which Mr. Singh and Ms. Kaur kept. *Id.*

### Ms. Darnell

Unlike Ms. Timko and Mr. Robinson, Ms. Darnell wasn't trafficked or subjected to forced labor. Her claims, instead, are entirely wage-and-hour focused. While she was employed at the Days Inn, she was shorted hours, not compensated for extra labor, not paid at the overtime rate, and denied vacation pay. *Id.* ¶¶ 123-125, 127-128. Eventually, Mr. Singh fired her, and he refused to cooperate in her unemployment claim. *Id.* ¶ 132.

---

[4] Mr. Robinson was, in fact, eventually arrested. After he finished his incarceration, Mr. Singh transported him from West Virginia back to the Days Inn in Pennsylvania. *Id.* ¶¶ 95-96.

## <u>Plaintiffs were not the only people caught in the forced-labor and trafficking scheme</u>

According to Plaintiffs, the forced-labor and trafficking scheme perpetrated by Defendants went beyond Ms. Timko and Mr. Robinson. *Id.* ¶ 20. Mr. Bhatia and Mr. Singh communicated about hiring homeless and other vulnerable victims and agreed to share trafficked individuals for hotel labor. *Id.* ¶¶ 25, 85-86. Mr. Robinson saw others at the Motel M and Days Inn "working under the same debt agreement as he was." *Id.* ¶¶ 87, 89. Ms. Darnell too "witnessed multiple individuals across multiple years working in exchange for rooms" at the Days Inn. *Id.* ¶ 130.

## <u>Defendant Wyndham</u>

The Days Inn was, at that time, in a franchise relationship with Defendant Wyndham. *Id.* ¶ 147. In exchange for the Days Inn's use of its brand, Wyndham received royalties for rented rooms, *id.* ¶¶ 153-154, 157, and enjoyed the ability to exercise control over the Days Inn in several ways: Wyndham mandated use of a customer rewards program; controlled the online booking process; dictated facility maintenance, modifications, and renovations; specified suppliers and vendors; had the right to (and did) send inspectors to the hotel; had access to the Days Inn's database and electronic systems; and dictated technology. *Id.* ¶¶ 146-164, 170-171. Wyndham also enforced room pricing, controlled whether the Days Inn could send business to competitors, and shared a central-reservation system with the hotel. *Id.* ¶¶ 161, 163, 166. Wyndham had the right to terminate the franchise agreement unilaterally. *Id.* ¶¶ 151, 165.[5]

---

[5] Wyndham filed the franchise agreement after the motion-to-dismiss hearing (ECF 37-1), and so neither party has addressed its contents or how it impacts Plaintiffs' claims.

After review, the Court finds that the franchise agreement corresponds with Plaintiffs' allegations about Wyndham's rights under the agreement. Among other things, the agreement: obligates the franchisee to renovate and improve the facility as dictated by the franchisor, and conditions facility modifications on franchisor

Wyndham, Plaintiffs allege, was familiar with human trafficking. It had knowledge about human trafficking at hotels generally and at its franchised locations specifically. *Id.* ¶¶ 133-145. It was also heavily involved in the development of training and educational resources to raise awareness of human trafficking and its indicia, and established methods through which employees could report suspected trafficking. *Id.* According to Plaintiffs, all of this, along with the franchise relationship between Wyndham and the Days Inn, meant that Wyndham knew or should have known about the forced-labor and trafficking scheme at issue now.

approval, ECF 37-1, ¶¶ 3.1, 3.12, 3.14 & Schedule D; gives the franchisor control over the days of operation, maintenance and appearance of the facility, who can manage the facility, how payment is accepted, and the choice of amenities, services, and facilities, *id.* ¶ 3.2; gives the franchisor control over purchasing decisions, *id.* ¶¶ 3.10, 4.4; mandates the use and maintenance of a property management system and other equipment and software as specified, including the franchisee's exclusive use of the franchisor's reservation system, *id.* ¶¶ 3.15, 4.2; demands the franchisee participate in intranet or extranet as required, the franchisor's rewards program, including additional standards pertinent to the program, and guest service and satisfaction guaranty programs, *id.* ¶¶ 3.4.4, 3.11, 3.15; obligates the franchisee to resolve customer complaints, *id.* Schedule C, § II.B; gives the franchisor control over facility promotion or the advertising of competing businesses, *id.* ¶ 3.11; dictates the method and timeliness of financial record keeping, and obligates participation in financial audits and facility inspections *id.* ¶¶ 3.6.1, 3.6.2, 3.6.4, 3.7, 4.8.

## SUMMARY OF CLAIMS AGAINST MOVING DEFENDANTS

| Count | Claim | Authority | Plaintiff(s) | Defendant(s) |
|---|---|---|---|---|
| I | Labor Trafficking | TVPRA | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| II | Benefitted from Human Trafficking | TVPRA | Timko, Robinson | Wyndham Hotels & Resorts, Inc. |
| III | Vicarious Liability for Human Trafficking | TVPRA | Timko, Robinson | Wyndham Hotels & Resorts, Inc. |
| IV | Labor Trafficking | PA Human Trafficking Law | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| V | Vicarious Liability for Labor Trafficking | PA Human Trafficking Law | Timko, Robinson | Wyndham Hotels & Resorts, Inc. |
| VI | Labor Trafficking | RICO | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| VII | Conspiracy to Commit Labor Trafficking | RICO | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| VIII | Intentional Race Discrimination | 42 U.S.C. § 1981 | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| IX | Failure to Pay Overtime | FLSA | All plaintiffs | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| X | Failure to Pay Overtime and Straight Time | WPCL | All plaintiffs | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| XI | Failure to Pay Overtime | PMWA | All plaintiffs | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
| XII | Failure to Pay Minimum Wage | PMWA | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |

| XIII | Unfair and Deceptive Debt Collection | FDCPA; FCEUA | Timko, Robinson | Milan, LLC, Himanshu Bhatia, Dipti Bhatia |
|------|------|------|------|------|
| XIV | Quantum Meruit/Unjust Enrichment | PA common law | All plaintiffs | All defendants |

<u>DISCUSSION AND ANALYSIS</u>

I.    **Plaintiffs' claims against Ms. Bhatia will be dismissed.**

To begin with, the Court will dismiss all of Plaintiffs' claims against Ms. Bhatia as insufficiently pled.

Plaintiffs' allegations identifying Ms. Bhatia by name consist of nothing but conclusory statements that she "owned and operated" the Motel M, ECF 1, ¶ 24, and that she was a "corporate officer[], executive[], and/or equity owner[] of Defendant Milan, LLC d/b/a Motel M[,]" *id.* pp. 22-23 (unnumbered paragraph under heading "PARTICIPATION THEORY"). Beyond that, Plaintiffs offer only group-pled allegations—*i.e.*, allegations referring to "Defendants" collectively—and allegations pled in passive voice.

This is inadequate. "A complaint . . . that solely tenders naked assertions devoid of further factual enhancement[] cannot survive a motion to dismiss under Rule 12(b)(6)." *Lewis v. DMH Invs., LLC*, No. 23-1446, 2023 WL 3862507, at *1 (3d Cir. June 7, 2023) (cleaned up); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss[.]").

Plaintiffs' group-pled or passive-voice allegations can't make up the difference. Under Federal Rule of Civil Procedure 8(a), a plaintiff must "identif[y] discrete defendants and the actions taken by these defendants in regard to the plaintiff's claims." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (cleaned up). While group pleading or the use of passive voice is not inherently in tension with that obligation, Plaintiffs' effort as it relates to Ms. Bhatia falls well short. Reading the complaint as a whole it becomes clear that many of the group-pled or passive-voice allegations refer to other defendants who carried out the alleged actions. For example, Plaintiffs allege in the TVPRA labor trafficking claim (Count I) that "The Defendants obtained [hotel and personal] labor [from Ms. Timko and Mr. Robinson]

by promising Ms. Timko and Mr. Robinson that they could work in exchange for a hotel room." ECF 1, ¶ 181. Yet earlier in the complaint, Plaintiffs allege that it was Mr. Bhatia, not Ms. Bhatia, who "agreed to pay Mr. Robinson in cash and off-the-books[,]" *id.* ¶ 84, and Mr. Singh, not Ms. Bhatia, "who agreed to give her employment in exchange for a room" at the Days Inn, *id.* ¶ 28. Maybe somewhere in the 48-page complaint there are group-pled or passive-voice allegations that might apply to Ms. Bhatia, but the Court need not "forever sift through its pages in search of the nature of the plaintiff's claim[.]" *Glover v. F.D.I.C.*, 698 F.3d 139, 147 (3d Cir. 2012) (cleaned up).

So the Court will dismiss Plaintiffs' claims against Ms. Bhatia and will not discuss them further in the claim-specific analysis that follows. *See E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901, 2023 WL 12053001, at *4 (D.N.J. Dec. 29, 2023) (describing scenario where "the only allegations that could plausibly apply to [defendants] are allegations directed at all Defendants" as one where denial of a motion to dismiss would be inappropriate (cleaned up)).

## II.     The TVPRA claims (Counts I-III).

Ms. Timko and Mr. Robinson bring claims for violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) against all moving Defendants. ECF 1, ¶¶ 176-223.

The TVPRA criminalizes peonage, slavery, involuntary servitude, forced labor, human trafficking, and sex trafficking, 18 U.S.C. §§ 1581-91, and allows victims to seek civil remedies for violations of its criminal provisions. *Id.* § 1595.

The criminal provisions implicated here reside in Sections 1589 and 1590, criminalizing forced labor and labor trafficking.

Section 1589, pertaining to forced labor, provides criminal penalties for perpetrators, or "[w]hoever knowingly provides or obtains the labor or services of a

person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]"  18 U.S.C. § 1589(a).  Criminally liable too are beneficiaries of forced labor, or "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means[.]"  *Id.* § 1589(b).

Section 1590, addressing trafficking, applies in part to "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of [the TVPRA]."  *Id.* § 1590(a).  Thus, "[a] Section 1590 claim is derivative—*i.e.*, it depends on a predicate TVPRA offense—such as forced labor."  *Mallela v. Cogent Infotech Corp.*, No. 19-1658, 2020 WL 2541860, at *3 (W.D. Pa. May 19, 2020) (Ranjan, J.) (cleaned up).

As for the TVPRA's civil-remedies provision, like Section 1589, it targets both perpetrators, and beneficiaries, or "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]."  18 U.S.C. § 1595(a).[6]

---

[6] Congress added the "***or attempts or conspires to benefit***" language in a January 5, 2023, amendment.  Plaintiffs don't suggest that this new language is retroactive or even implicated, so the Court doesn't consider it.

Plaintiffs bring both perpetrator and beneficiary claims under Section 1595(a).[7]  As relevant to the motions to dismiss, they allege that the Motel M defendants are directly liable as perpetrators, and that Wyndham is directly liable as a beneficiary.  Plaintiffs also allege an "indirect liability" claim—that Wyndham is vicariously liable under the TVPRA.  The Court addresses each claim below.

### A. The perpetrator claims against the Motel M defendants (Count I).

Plaintiffs allege that the Motel M defendants are liable as "perpetrators" of forced labor and labor trafficking.  ECF 1, ¶¶ 176-196.[8]

Plaintiffs' allegations are sufficient with respect to Mr. Robinson's claims against Milan, LLC, and Mr. Bhatia.  Plaintiffs' claims otherwise fail.

### 1. Only Mr. Robinson plausibly alleges a perpetrator claim against Milan, LLC.

Plaintiffs argue that Milan, LLC, knowingly obtained Mr. Robinson's labor by three illegal methods.  First, by "abuse of the legal process[,]" contrary to 18 U.S.C. § 1589(a)(3), by paying Mr. Robinson "'off-the-books' and 'in cash,' . . . in order to . . . pressure . . . [Mr.] Robinson to . . . continu[e] work[ing] for the company, [and] to . . . refrain from leaving his employment."  ECF 27, p. 4.[9]  Second, again by "the abuse or

---

[7] Plaintiffs only explicitly discuss Section 1589, not Section 1590.  Still, because Count I is titled "labor trafficking," the allegations under Count I discuss trafficking and transporting for labor, and Count I is for a violation of the TVPRA generally, the Court considers Plaintiffs to be premising their Section 1595 civil claims on criminal violations of both Sections 1589 and 1590.

[8] The Motel M defendants say it is unclear if Plaintiffs are bringing a Section 1595 perpetrator claim or beneficiary claim.  ECF 24, p. 12 & n.3.  In their response, Plaintiffs only discuss a Section 1595 perpetrator claim.  ECF 27, pp. 3-7.  This aligns with the complaint having a separate beneficiary count that includes only Wyndham.  So the Court proceeds as if Plaintiffs are alleging only a perpetrator claim against the Motel M defendants.

[9] "Abuse or threatened abuse of law or legal process" is defined as "the use or threatened use of a law or legal process . . . in any manner or for any purpose for

threatened abuse of law or legal process," but this time by "contract[ing] with" Mr. Robinson and subjecting him to "an unlawful debt arrangement[,]" before handing him off to the Days Inn to work there under a similar debt arrangement. *Id.* And third, in violation of 18 U.S.C. § 1589(a)(4), "by means of any scheme, plan, or pattern intended to cause [Mr. Robinson] to believe that" if he didn't work, he would suffer physical restraint, by using his "outstanding criminal warrants as leverage to keep him working for the hotels[.]" ECF 27, pp. 4-5.

Plaintiffs' allegations about Motel M-specific conduct are wanting. From the start, Plaintiffs insufficiently tie Mr. Robinson's debt arrangement to a Section 1589(a)(3) violation for abuse or threatened abuse of law or legal process. For one, payment "in cash and off-the-books" doesn't implicate any violation of Section 1589, and it isn't clear why that payment—which, as the Motel M defendants note, is pled as if Mr. Robinson requested it, ECF 1, ¶ 84—would pressure Mr. Robinson to continue working at the Motel M. Even more to the point, while Plaintiffs allege that Mr. Bhatia placed Mr. Robinson in some sort of debt arrangement, they provide no details about what that looked like for Mr. Robinson while he was at the ***Motel M***.[10] And Plaintiffs neither indicate that Mr. Robinson's ***debt arrangement*** was used as a threat, nor tie any threat to the ***Motel M*** specifically. *Compare* ECF 1, ¶¶ 183-84 (alleging Ms. Timko was subject to a debt arrangement and threatened with arrest and homelessness; "[s]pecifically," she was told her debt would result in her arrest if

---

which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* § 1589(c).

[10] Plaintiffs do allege that "[u]pon information and belief, Mr. Bhatia . . . subjected [vulnerable individuals] to the same or similar debt arrangement at Motel M [as "that the new Stanton Days Inn had with Ms. Timko and Mr. Robinson."]." ECF 1, ¶¶ 255-56. But in context this doesn't refer to Mr. Robinson, and the allegation is in the RICO Count (Count VI), and so is not incorporated into the TVPRA trafficking claims (Count I). *Id.* ¶ 176 (TVPRA claims "incorporat[ing] all the paragraphs ***above***").

she didn't continue to work at the Days Inn), *with* ¶¶ 183, 185 (alleging Mr. Robinson was subject to a debt arrangement and threatened with arrest and homelessness; "[s]pecifically," that he received threats to keep him working at the Days Inn).[11]   For similar reasons, Plaintiffs' argument as to a Motel M-based scheme or plan under Section 1589(a)(4) too falls short.  Plaintiffs allege that Mr. Robinson was threatened with arrest for his warrants by ***Mr. Singh*** while he was working at the ***Days Inn***, but not that he was threatened in that way by Mr. Bhatia while he was working at the Motel M.  ECF 1, ¶¶ 105-06.

Considering the above, to the extent that Plaintiffs' perpetrator claim against Milan, LLC, depends on an underlying violation of Section 1589, it is insufficiently pled.[12]   The claim survives complete dismissal, however, because there is another hook to underlying criminal liability—a trafficking violation under Section 1590.

Plaintiffs allege that Mr. Bhatia "traded" Mr. Robinson to the Days Inn, so that the Days Inn could benefit from his labor under a debt arrangement, and that Mr. Bhatia had an agreement with Mr. Singh to locate and traffic other individuals in a similar manner.  ECF 1, ¶¶ 85, 88, 182.  That plausibly alleges that the Motel M "knowingly recruit[ed], harbor[ed], transport[ed], provide[d], or obtain[ed] by any

---

[11] While Plaintiffs allege that "All of Defendants' actions were done in order to exert pressure on Ms. Timko and Mr. Robinson to keep them working under an unlawful debt arrangement[,]" this is conclusory and afforded no weight.  ECF 1, ¶ 195.

[12] At the end of this count, Plaintiffs also allege that "Defendants" threatened to use law or legal process to jail Plaintiffs without justification or authority, by "dictat[ing] Plaintiffs'] housing situation through an employment agreement[,]" by "threatening to evict Plaintiffs from their housing "immediately and without any notice[,]" and by "restricting and attempting to restrict [Plaintiffs'] freedom of association[.]"  ECF 1, ¶¶ 189-192.  These are conclusory, contain legal conclusions, and are examples of the kind of group pleading that is impermissible because it "broadly attribute[s] actions to the Defendants as a group without any supporting factual allegations."  *Pollard v. Clark*, No. 20-194, 2021 WL 5911055, at *8 (W.D. Pa. Nov. 4, 2021) (Lanzillo, M.J.), *report and recommendation adopted*, No. 20-194, 2021 WL 5909807 (W.D. Pa. Dec. 14, 2021) (Baxter, J).

means, any person for labor or services in violation of [the TVPRA]." 18 U.S.C. § 1590(a). In that way, Plaintiffs can sidestep their deficiently pled allegations of Motel M perpetrating forced labor for sufficiently pled allegations of perpetrating *trafficking*, with the predicate forced-labor actions taken by the *Days Inn defendants* (as explained below in the Court's discussion of the Wyndham TVRPA claims).

Since the Court can thus infer a plausible trafficking violation, it will not dismiss Plaintiffs' perpetrator-liability claims against Milan, LLC, in its entirety. But only Mr. Robinson's claim survives, because there aren't any allegations that Ms. Timko was trafficked by Milan, LLC.

### 2. Only Mr. Robinson plausibly alleges a perpetrator claim against Mr. Bhatia.

Mr. Bhatia would typically be protected from individual liability because of his position as a corporate officer of Milan, LLC. *See, e.g.*, *K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*, 689 F. Supp. 3d 35, 48 (E.D. Pa. 2023) ("Corporate officers cannot be held personally liable for the torts allegedly committed by the corporation simply by virtue of their office under Pennsylvania law."). So Plaintiffs, invoking one of the "two exceptions to this general rule[,]" *Boddie v. Henny's Sports Bar*, No. 24-1393, 2025 WL 52009, at *6 (E.D. Pa. Jan. 8, 2025), argue that Mr. Bhatia is individually liable under a Pennsylvania common-law "participation theory." ECF 27, p. 5; ECF 1, pp. 22-23 (unnumbered paragraph under heading "PARTICIPATION THEORY").[13]

_____

[13] Plaintiffs "offer[] no basis for [their] extension of a state common law tort doctrine to a federal statutory framework." *Spalla v. Elec. Mfg. Servs. Grp., Inc.*, No. 16-821, 2017 WL 569178, at *3 (M.D. Pa. Feb. 13, 2017) (rejecting opinion doing so in Title VII case). That said, the Motel M defendants don't challenge this theory on that basis, and the theory exists under federal common law, as well. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984) (holding, with respect to Copyright Act violation, that "[a]n officer or director of a corporation who knowingly participates in the infringement can be held personally liable, jointly and

"The participation theory of liability is not a cause of action in and of itself, but rather a form of derivative liability." *K&G Contracting, Inc.*, 689 F. Supp. 3d at 48-49 (cleaned up). "Under this theory, a plaintiff may hold an officer of a corporation liable as an individual actor, rather than as an owner, who personally participated in the alleged tortious acts committed on behalf of the corporation." *NVR, Inc. v. Majestic Hills, LLC*, No. 18-1335, 2023 WL 4685815, at *4 (W.D. Pa. July 21, 2023) (Ranjan, J.) (cleaned up). This requires the individual to "engage[] in misfeasance, rather than nonfeasance." *Id.* (cleaned up). Likewise, "[t]he mere averment that a corporate officer should have known the consequences of the liability-creating corporate act is insufficient to impose liability." *Boddie*, 2025 WL 52009, at *6 (cleaned up).[14]

Plaintiffs assert that among other things, Mr. Bhatia "contract[ed] with [Mr.] Robinson outside the regular channels of proper employment[,] and agree[d] to funnel him to the New Stanton Days Inn for continued labor[,]" employed Mr. Robinson "off-the-books," and "traded" him to the Days Inn. ECF 27, p. 6; ECF 1, ¶¶ 85, 88, 182.

That's enough to make out Mr. Bhatia's direct participation in the trafficking portion of the scheme, at least for Mr. Robinson's perpetrator claim. Since, however,

---

severally, with the corporate defendant"); *see also Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (applying participation theory to Lanham Act violations). This hasn't been briefed but, as far as the Court can tell, there aren't any substantive differences in application between the theories, and so, consistent with the parties' approach, the Court cites to cases applying Pennsylvania law.

[14] The Motel M defendants argue in a footnote that the theory applies only to torts, not to statutory claims. ECF 24, p. 11 n. 2. But the theory has been extended to statutory claims by at least some Pennsylvania courts, *see, e.g., B & B Res., LLC v. Dep't of Env't Prot.*, 180 A.3d 812, 818 (Pa. Commw. Ct. 2018) ("Although it was initially adopted in tort actions, this Court has held that the participation theory applies to statutory violations"), and, as cited above, by the Third Circuit in the federal common-law context.

no allegations tie Mr. Bhatia to TVPRA violations against Ms. Timko, her perpetrator claim against him fails.

**B.    The beneficiary-liability claims against Wyndham (Count II).**

Plaintiffs allege that Wyndham is liable as a beneficiary of forced labor and labor trafficking.  ECF 1, ¶¶ 197-216.

A TVPRA beneficiary-liability claim requires allegations—in addition to a predicate TVPRA criminal violation—that the defendant "(1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) it knew or should have known has engaged in [forced labor/labor trafficking]."  *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020) (cleaned up).  Plaintiffs' allegations suffice.

**1.    Plaintiffs plausibly allege predicate TVPRA violations.**

The predicate violation is satisfied through Plaintiffs' allegations of TVPRA perpetrator liability in connection with Mr. Singh and the Days Inn.

Plaintiffs allege that Mr. Singh threatened Ms. Timko with arrest for her failure to pay back her debt, ECF 1, ¶¶ 42, 60-62, and that Mr. Singh threatened Mr. Robinson with arrest if he stopped working for the Days Inn or left the property without supervision, *id.* ¶¶ 83, 105-107.  In other words, Plaintiffs allege that Mr. Singh knowingly obtained Plaintiffs' labor "by means of the abuse or threatened abuse of law or legal process."  18 U.S.C. § 1589(a)(3).

So the Court turns to Wyndham-specific elements.

2.      **Plaintiffs plausibly allege that Wyndham "knowingly benefited."**

This element requires allegations that a "defendant knew it was receiving some value from participating in the alleged venture." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).

Plaintiffs allege that Wyndham received royalties from room rentals at the Days Inn.   ECF 1,  ¶¶  153-154, 157, 201-204.   Wyndham argues that that is too attenuated; that what's necessary is a causal nexus between conduct and the receipt of a benefit,  ECF 13, pp. 22-23, and that the benefit must come from participation in a trafficking venture, not something else.  ECF 19, p. 7.

For two reasons, "[t]he Court is persuaded by the vast majority of district courts that have found allegations similar to Plaintiff[s'] sufficient to meet this element." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 24-217, 2025 WL 824369, at *7 (S.D. Cal. Mar. 14, 2025) (cleaned up) (collecting cases).  First, Section 1595 "says nothing about *why* the sex-trafficker provides any benefit to the participant-defendant." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 565 (7th Cir. 2023).  Instead, "as the statutory text clearly dictates, where the defendant is simply aware that it is benefiting, that is enough." *Id.*   Second, as the Court discusses shortly, the participation required is participation in a commercial or business venture, not necessarily a criminal one, so the benefit can result from a commercial relationship too.

Accordingly,  Plaintiffs  "plausibly  allege[]  that  [Wyndham]  knowingly benefitted financially insofar as [it] received profits from rooms rented out" at the Days Inn. *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-8174, 2025 WL 1166519, at *3 (D.N.J. Apr. 21, 2025).

### 3. Plaintiffs plausibly allege that Wyndham "participated in a venture."

This element requires two things: (1) a "venture"; and (2) "participation" in that venture by the defendant. Plaintiffs have plausibly pled both.

*Venture.* There are generally two approaches to defining the term. Some courts "incorporate section 1591's criminal definition of 'venture'—as 'any group of two or more individuals associated in fact, whether or not a legal entity'—into section 1595(a)." *Doe (K.H.) v. R-Roof VI LLC*, No. 23-11422, 2025 WL 97620, at *4 (E.D. Mich. Jan. 14, 2025). But most decline to do so, and "instead adopt the Eleventh Circuit's approach in *Doe # 1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which defines 'venture' as 'an undertaking or enterprise involving risk and potential profit.'" *Doe (K.H.)*, 2025 WL 97620, at *4 (quoting *Red Roof Inns*, 21 F.4th at 724).

Plaintiffs choose the Eleventh Circuit's formulation, and argue that the franchise relationship between Wyndham and the Days Inn meets it. ECF 18, p. 5. While Wyndham cites the Eleventh Circuit's definition, it doesn't focus on it. Instead, Wyndham imports the criminal definition of venture into the civil context and argues by analogy to the definition of "venture" in the Racketeer Influenced and Corrupt Organizations Act (RICO) that a commercial relationship—without a shared criminal purpose—isn't enough. ECF 13, pp. 16-19; ECF 19, p. 7.

Plaintiffs' approach is the better one, as it is more faithful to the statutory text. Section 1591's definition of "venture" is expressly limited to the use of "venture" in Section 1591. *See* 18 U.S.C. § 1591(e) (defining terms "[i]n this section"); *Red Roof Inns*, 21 F.4th at 724; *G.G.*, 76 F.4th at 554 n.7. What's more, the plain text of Section 1595 "does not say '[]trafficking venture,' but only 'venture.' In other words, 'venture' is not described in criminal terms." *G.G.*, 76 F.4th at 553-54 (cleaned up). So the Court agrees with those courts declining to transpose Section 1591's definition into Section 1595, and holds that for civil-liability purposes, a TVPRA "venture" can be

either a business venture, or a criminal one. *See, e.g., Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092, at *3 (D.N.J. Jan. 30, 2025); *R.A. v. Best W. Int'l, Inc.*, No. 23-3459, 2025 WL 961502, at *5 (S.D. Ohio Mar. 31, 2025).[15]

As alleged by Plaintiffs, Wyndham was in a franchise relationship with the Days Inn—*i.e.*, a commercial relationship with risk and profit. ECF 1, ¶¶ 146-165, 201-204. Plaintiffs have thus adequately pled that a qualifying "venture" exists. *See, e.g., A.B. v. Wyndham Hotel & Resorts, Inc.*, No. 24-1588, 2025 WL 1920417, at *4 (M.D. Pa. July 11, 2025).

**Participation.** Wyndham argues that even if there were a venture, there are no allegations that Wyndham "knew of, intended, facilitated, or in any way participated in [the Days Inn's owners'] conduct." ECF 13, p. 18.

To the extent Wyndham's argument is that participation requires an overt act in furtherance of the criminal activity, the Court rejects it. *See, e.g., Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 731 (E.D. Tex. 2024) ("[T]here is a general consensus that an overt act in furtherance of sex trafficking is not required for a defendant to 'participate in a venture.'" (cleaned up)); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1062 (D. Colo. 2021) (noting "most district courts to have examined the issue have rejected the overt act argument" because it "would void the 'known or should have known' language of § 1595" (collecting cases)).

---

[15] The RICO cases are thus irrelevant. *See Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-619, 2021 WL 5579117, at *6 (D. Colo. Nov. 30, 2021) (rejecting use of RICO to inform interpretation of Section 1595 claim); *L.H. v. Red Roof Inn, Inc.*, No. 22-625, 2023 WL 5725574, at *8 (W.D. Ky. Sept. 5, 2023) (same); *see also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 23-235, 2024 WL 4204906, at *6 (E.D.N.C. Sept. 16, 2024) ("Congress elected to write RICO and the TVPRA differently, so as to diminish significantly the force of RICO authority as applied to the TVPRA. . . . RICO authority therefore has little utility here.").

So what must be alleged to find "participation"?  Some courts follow the Eleventh Circuit's guidance that participation in a venture means "taking part" in the commercial venture.  *See Doe v. Wyndham Hotels & Resorts, Inc.*, No. 24-4895, 2025 WL 1119736, at *4 (C.D. Cal. Mar. 5, 2025).  Others find persuasive the Seventh Circuit's wording, that participation exists "where the participant provides assistance, support, or facilitation to the trafficker through a continuous business relationship that would allow an inference that the participant and trafficker have a tacit agreement."  *Id.* (quoting *G.G.*, 76 F.4th at 559 (cleaned up)).  And some find no distinction between the two.  *Id.* (collecting cases).  The common thread appears to be that what must be alleged are facts that "'connect[] the dots' between the alleged trafficking and the franchisors."  *Id.*; *see also Doe (K.E.C.)*, 750 F. Supp. 3d at 734 (same).

Ordinarily, in cases involving franchisors, "it is generally more difficult to allege participation on the part of the franchisors because they are not the entities that own or operate the hotels; rather, they are one step removed from the franchisees and their employees."  *Doe (K.E.C.)*, 750 F. Supp. 3d at 734; *see also G.G.*, 76 F.4th at 562 (same).  So the dots are "connected" by "link[ing] the franchisors to the traffickers through the franchisors' oversight of the franchisees and hotel operations."  *Doe*, 2025 WL 1119736, at *4.  But this is not an ordinary case.  That is, the more common trafficking case involves traffickers who stay at and use hotels for their trafficking activities.  Unlike this more common scenario, here, the alleged traffickers are the ***franchisee and its operators***, not customers of the franchisee.  Eliminate that intermediary and you are left with something resembling the relationship between trafficker and hotel, suggesting the mere existence of a franchise relationship is enough.  *Cf. M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) (holding hotels participated in a venture by renting rooms to traffickers).

-21-

In any event, even if this were the more common trafficking case, Plaintiffs' allegations would meet this test. Plaintiffs allege that Wyndham "had ongoing control over [the Days Inn's] daily duties[,]" that Wyndham required use of its customer rewards program, that it provided training, controlled maintenance, dictated suppliers, vendors, and technology, controlled online booking, maintained access to the Days Inn's database and electronic systems, shared a central reservation system, and (in some way) controlled pricing. ECF 1, ¶¶ 56, 146-166. Courts have found similar allegations sufficient. *See, e.g.*, *Doe*, 2025 WL 1119736, at *5 (franchisor alleged to have control and oversight over renting rooms via central reservation system, check-in, payment, and identity-verification procedures, room rates, and cancellation policies); *Doe (M.J.J.)*, 2025 WL 342092, at *3 (franchisor had control over hiring, training, and policy enforcement); *B.D.G. v. Choice Hotels Int'l, Inc.*, No. 22-3202, 2023 WL 5935646, at *5 (S.D. Ohio Sept. 12, 2023) (franchisor profited from franchise relationship, failed to implement trafficking policies, and maintained expansive control over the hotel operation standards); *Doe v. Hotels*, No. 23-1012, 2024 WL 2955728, at *8 (M.D. Fla. June 12, 2024) (franchisor had control over training staff, response, policies, and procedures regarding human trafficking, the room reservation system, pricing and policies for payment and identification, and security), *reconsideration denied sub nom. Jane Doe K.R. v. Choice Hotels*, No. 23-1012, 2024 WL 4373374 (M.D. Fla. Oct. 2, 2024).

Accordingly, Plaintiffs have plausibly alleged that Wyndham participated in a venture.[16]

---

[16] Wyndham warns that this would essentially impose strict liability on hotel franchisors. ECF 19, p. 8 n.2. The Court's holding shouldn't be read so broadly. The Court doesn't "read the [TVPRA] as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking. [Rather, the Court] construe[s] the [TVPRA] under its terms as imposing liability should a jury find the business benefitted from participating in a venture it

### 4. Plaintiffs plausibly allege that Wyndham "knew or should have known."

Before the Court can resolve this element, it must answer a threshold question: whether the required knowledge must be of the specific plaintiff. That is, Plaintiffs often advance "the majority view among federal courts that direct-beneficiary claims do not require plausible allegations that the defendant knew or should have known of the specific victim who has brought the civil action[,]" *Doe (K.H.) v. R-Roof VI LLC*, No. 23-11422, 2025 WL 97620, at *5 n.3 (E.D. Mich. Jan. 14, 2025), as set forth by the Seventh Circuit in *G.G.* Franchisors tend to push for the minority position, developed by the Eleventh Circuit in *Red Roof*, "that direct beneficiary liability requires a plausible showing that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." *Id.* (cleaned up).

Here, Plaintiffs contend that the standard is the former, but that they have alleged facts sufficient to meet either one. ECF 1, ¶ 206; ECF 18, pp. 9-10. Apparently viewing the two formulations as compatible, Wyndham cites to both, but ultimately seems to advocate for the Eleventh Circuit's more restrictive interpretation. ECF 13, p. 20; ECF 19, pp. 8-11.

The Court agrees with the majority position that knowledge of a particular plaintiff's trafficking isn't necessary. Rather, the statute requires knowledge as to the venture—in other words, knowledge that the venture engaged in trafficking of some kind. "The express terms of the statute . . . impose [civil] liability for benefiting from a venture that the Defendants knew or should have known was engaged in

---

knew or should have known engaged in trafficking." *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020). Put differently, liability under Section 1595 is circumscribed by the scienter requirement. Participation in a business venture isn't enough to subject a franchisor to liability; it still must know or should have known that the venture was engaging in acts violating the TVPRA.

[criminal] violations of [the TVPRA], not [criminal] violations of [the TVPRA] **with respect to a particular person**." *R.A.*, 2025 WL 961502, at *6.

That isn't to say that generalized knowledge of trafficking in the hotel industry, or even at Wyndham's other properties, is enough. Section 1595 "speaks in singular terms – participation in a venture which that person . . . should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (cleaned up). So Plaintiffs must still allege that Wyndham knew or should have known that the **particular venture** in which it participated engaged in a trafficking crime. *See Doe v. Wyndham Hotels & Resorts*, No. 23-01676, 2025 WL 85831, at *8 (E.D. Cal. Jan. 7, 2025) ("[T]he knowledge requirement attaches to the venture, and not a particular victim."); *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 23-00871, 2024 WL 2186173, at *6 (N.D. Ohio May 15, 2024) ("[T]he knowledge element is specific to the venture that trafficked [the plaintiff]"). Otherwise, as Wyndham observes, "to conclude that franchisors like Wyndham . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" ECF 13, p. 21 (quoting *S.J.*, 473 F. Supp. 3d at 154).

So what qualifies under this standard? Plaintiffs propose placing the allegations along "a spectrum of culpability interpreting the beneficiary theory of liability[,]" ECF 18, p. 11, "bookended by two cases, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), and *Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018)." *Doe v. JRD P'ship*, No. 23-928, 2025 WL 1097335, at *6 (M.D. Tenn. Apr. 10, 2025). At the sufficiently pled end is *Ricchio*, where the motel owner high-fived the trafficker about "getting this thing going again," there was a past business relationship between the two, the owner ignored the victim's physical state, and the trafficker stopped the victim from escaping in front of the motel office. *Ricchio*, 853 F.3d at 555. And at the

-24-

opposite is *Lawson*, where allegations of one police visit to a condo after a fight and one ambulance sent in six years weren't enough to hold the condo owner liable. *Lawson*, 2018 WL 2012869, at *13-14.

Plaintiffs argue that their case against Wyndham falls somewhere in the middle of this spectrum. That is a reasonable enough conclusion, but it doesn't answer the question of where in the spectrum the sufficiency line lies. On that point there is no consensus. "Some courts have found that simply alleging general knowledge of sex trafficking in the hotel industry, facts specific to the victim's trafficking, and an allegation of the franchisors' failure to implement policies to combat sex trafficking in their hotels was sufficient[.]" *Doe (K.E.C.)*, 750 F. Supp. 3d at 736-37 (collecting cases). Some require more, like allegations "that the franchisor monitored the franchisee hotels or that the staff reported sex trafficking activity to the franchisor." *Id.* at 737. And absent franchisor-specific allegations, some courts look for an agency relationship between the franchisor and franchisee. *See, e.g.*, *T.S. v. Wyndham Hotels & Resorts, Inc.*, No. 23-2530, 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) ("What saves [plaintiff's] claim, however, is that she has plausibly alleged an agency relationship between Wyndham and [its franchisee], and thus she may impute [the franchisee's] knowledge to Wyndham."); *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 24-204, 2025 WL 725268, at *9 (E.D. Va. Mar. 6, 2025) ("[F]or Wyndham and Choice to be liable under Section 1595, knowledge or constructive knowledge of the plaintiff's sex trafficking must be imputed to them from the franchisee employees.").

Plaintiffs argue that they have alleged notice of trafficking generally and at Wyndham-branded hotels; indicia of trafficking at the Days Inn specifically, including of Plaintiffs themselves; that Wyndham should have known of these indicia based on its control over Days Inn's operations; and that Wyndham has failed to adequately train and combat trafficking. ECF 18, pp. 11-14.

-25-

That is enough (perhaps barely) at this early stage, regardless of the approach the Court takes.  For instance, Plaintiffs have alleged "general knowledge of sex trafficking in the hotel industry, facts specific to [their] trafficking[/forced labor], and . . . [Wyndham's] failure to implement policies to combat sex trafficking in their hotels[.]"  *Doe (K.E.C.)*, 750 F. Supp. 3d at 736-37.  They have also alleged that Wyndham monitored the Days Inn.  And, as explained below, they have alleged an agency relationship between Wyndham and the Days Inn.  All of this together presents a plausible picture of knowledge or constructive knowledge.  That said, discovery certainly will be critical here as to this particular element, and depending on what is discovered, this may be an issue to re-visit at summary judgment.

With all elements thus met, Plaintiffs have plausibly pled their beneficiary-liability claims against Wyndham.

### C.    The vicarious-liability claims against Wyndham (Count III).

Plaintiffs allege that, in addition to being directly liable as a beneficiary, Wyndham is also vicariously liable for the Days Inn's actions.  ECF 1, ¶ 221.  Wyndham asserts that a vicarious-liability claim is not cognizable under the TVPRA, but even if it is, it isn't alleged here.  ECF 13, p. 24; ECF 19, p. 11.  Plaintiffs' claims will survive.

As an initial matter, Plaintiffs can bring a vicarious-liability claim.  *See J.L.*, 521 F. Supp. 3d at 1064 ("[N]umerous district courts have rejected the argument that the TVPRA does not permit agency liability." (collecting cases)); *see also Norambuena v. W. Iowa Tech Cmty. Coll.*, 773 F. Supp. 3d 628, 708 (N.D. Iowa 2025) ("A civil liability claim under § 1595 is essentially a tort action.  Because the TVPRA essentially creates a tort action, Congress typically intends its legislation to incorporate tort-related vicarious liability rules[.]" (cleaned up)).[17]

---

[17] Wyndham points to *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), and cases applying it, to argue otherwise.  ECF

The next question is whether federal common law or Pennsylvania common law controls the analysis. Reflecting what is clearly a common theme with TVPRA cases, courts are split on this issue. *See, e.g.*, *S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778-79 & n.43 (N.D. Ohio 2024) (collecting cases and holding that even if federal common law applied, federal common law should incorporate state common law); *T.B. v. Red Roof Inns, Inc.*, No. 24-02420, 2025 WL 755165, at *15 (S.D. Ohio Mar. 10, 2025) (noting "growing body of case law" applying federal common law, but holding analysis is the same). Plaintiffs proceed under Pennsylvania law, and Wyndham seems to acquiesce to that choice, ECF 18, pp. 23-26; ECF 19, pp. 11-12, so the Court will apply Pennsylvania law.

"Under Pennsylvania law, . . . . [t]he mere existence of a franchise relationship does not necessarily trigger a master-servant relationship, nor does it automatically insulate the parties from such a relationship." *A.B.*, 455 F. Supp. 3d at 195 (cleaned up). Rather, "[t]he key focus . . . is the right to control the way the servant's work is accomplished. . . . [T]his means the focus of the inquiry should be whether the alleged master has day-to-day control over the manner of the alleged servant's performance." *Id.* (cleaned up). Relevant are "both (1) the right to control, regardless of whether the right was actually exercised, and (2) the exercise of actual control, whether or not

---

13, pp. 24-25; ECF 19, p. 11. In *Central Bank of Denver*, the Supreme Court concluded that aiding and abetting liability was unavailable under the Securities Exchange Act because the statute didn't expressly provide that cause of action or mention aiding and abetting liability. *Cent. Bank of Denver*, 511 U.S. at 176-77. But as the Third Circuit explained soon after, "[t]he Supreme Court's wariness . . . rested on the nature of aiding and abetting liability itself. . . . By contrast, courts imposing liability on agency theories are not expanding the category of affirmative conduct proscribed by the relevant statute; rather, they are deciding on whose shoulders to place responsibility for conduct *indisputably proscribed* by the relevant statute." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1430-31 (3d Cir. 1994) (permitting agency theory of vicarious liability in Lanham Act claim).

doing so was within the franchisor's rights." *Coryell v. Morris*, 330 A.3d 1270, 1279 (Pa. Super. Ct. 2025).

Plaintiffs allege that Wyndham had exclusive control of online bookings and the franchise agreement's terms, including the unilateral ability to terminate; Wyndham had plenary access to the Days Inn's computer systems and shared a central reservation system; it controlled approval rights for building modification or renovation; it prevented the Days Inn from diverting business to a competitor; and it had conversations with the Days Inn about overcharging guests, false advertising, and bad reviews. ECF 1, ¶¶ 146-168.

That's enough for now. *See A.B.*, 455 F. Supp. 3d at 196 (finding sufficient allegations that the franchisor "exercise[d] ongoing and systemic right of control over its franchisee hotels[,] . . . including sharing profits, standardized training methods for employees, building and maintaining the facility in a manner specified by [the franchisor]; regular inspection of the facility and operation by [the franchisor]; and fixing prices" (cleaned up)); *see also A.B.*, 2025 WL 1920417, at *6 (finding sufficient allegations that the franchisor (Wyndham) "conduct[ed] all staff training, regulat[ed] all policies and procedures followed by the hotel, require[ed] the hotel to use Wyndham's property management system, ha[d] final approval over all substantial changes to the hotel, inspect[ed] the hotel, determin[ed] room rental rates at the hotel, and maintain[ed] control over staffing decisions at hotel"); *cf. Coryell*, 330 A.3d at 1283-84 (in non-TVPRA case, finding instructive prior decision in *Juarbe v. City of Philadelphia*, 431 A.2d 1073, 1078 (Pa. Super. Ct. 1981), which sent agency question to jury where there was evidence franchisor could do random inspections; compel appearance of franchise and franchisee clothing; control the hours of operation; set prices; require the addressing of customer grievances; control products offered; prohibit the posting of unauthorized signs; and prohibit selling products of a competitor, all under the threat of termination).

Wyndham counters that Mr. Singh and Ms. Kaur "made all of the personnel decisions relevant to Plaintiffs' claims[,]" made all hiring decisions, managed and supervised all employees who worked there and the facility itself, ECF 19, p. 12, and the other items relate only to its ability to maintain brand standards. ECF 13, p. 26. But the agency determination is a fact-specific one usually left to the jury, *Coryell*, 330 A.3d at 1280, so weighing these factors is inappropriate, particularly before discovery. Moreover, "Pennsylvania does not distinguish between controls put in place to protect a franchise's goodwill and intellectual property and controls for other purposes." *Myers v. Jani-King of Phila., Inc.*, No. 9-1738, 2015 WL 1055700, at *14 (E.D. Pa. Mar. 11, 2015), *aff'd sub nom. Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314 (3d Cir. 2016). Thus, even if certain aspects of Wyndham's alleged control were just Wyndham's "imposition of brand standards aimed at promoting uniformity and quality across a franchise system," ECF 13, p. 26, those allegations aren't shielded from consideration.

Accordingly, Plaintiffs have plausibly alleged an agency relationship.

## III.    The Pennsylvania human-trafficking-statute claims (Counts IV-V).

Plaintiffs bring trafficking claims under Pennsylvania's human-trafficking statute, a TVPRA analogue. ECF 1, ¶¶ 224-239.

The human-trafficking statute criminalizes forced labor against a person who "knowingly . . . subjects an individual to labor servitude" through any of thirteen means. 18 Pa. C.S. § 3012.[18] It also criminalizes labor trafficking against both perpetrators ("if the person recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly

---

[18] "Labor servitude" is defined as "[l]abor which is performed or provided by another individual and is induced or obtained by any of the means set forth in section 3012(b)." *Id.* § 3001.

disregards that the individual will be subject to labor servitude"), *id.* § 3011(a)(3), and beneficiaries ("if the person knowingly benefits financially or receives anything of value from an act which facilitates any activity under paragraph (3)"), *id.* § 3011(a)(4).[19]

The Pennsylvania human-trafficking statute provides a civil remedy as well, to "victim[s] of human trafficking . . . against any person that participated in the human trafficking of the individual[,]" *id.* § 3051(a)(1), and to "individual[s] who [are] victim[s] of the sex trade . . . against a person that: (i) recruits, profits from or maintains the victim in any sex trade act; (ii) abuses or causes bodily harm to the victim in any sex trade act; and (iii) knowingly advertises or publishes advertisements for purposes of recruitment into sex trade activity[,]" *id.* § 3051(a)(2).

Ms. Timko and Mr. Robinson bring Pennsylvania human-trafficking-statute perpetrator claims against the Motel M defendants, and allege that Wyndham is vicariously liable under the statute.[20]

These claims are largely co-extensive with the TVPRA claims. Wyndham zeroes in on two differences between the TVPRA and the Pennsylvania human-trafficking statute, but they don't compel a different result. First, Wyndham argues that it is expressly exempt from liability under the human-trafficking statute's "safe harbor." ECF 13, pp. 28-30. "Pennsylvania's statute creates an exception, or safe harbor, to civil liability [for] 'any person who provides goods or services to the general

---

[19] Plaintiffs' complaint also references Section 3014, pertaining to, among other things, the destruction or confiscation of passports or identification to prevent travel. ECF 1, ¶ 226. But Plaintiffs neither appear to plead any facts relevant to a violation of Section 3014, nor cite to Section 3014 in their briefing.

[20] It isn't clear from the complaint whether Plaintiffs are bringing a perpetrator claim, a beneficiary claim, or both. Since Plaintiffs don't differentiate their argument on this point between the TVPRA and the Pennsylvania human-trafficking statute, the Court infers that it is a perpetrator claim only.

public and to a person who would be liable under subsection (a)(2) [relating to sex trafficking], absent a showing that the person: (1) knowingly markets or provides its goods or services to a person liable under subsection (a)(2); (2) knowingly receives a higher level of compensation from a person liable under subsection (a)(2); or (3) supervises or exercises control over a person liable under subsection (a)(2)." *A.B.*, 455 F. Supp. 3d at 198 (quoting 18 Pa. C.S. § 3051(b)). The statute is not precisely written, but what is clear, based on the language of subsection (a)(2) and the exception at subsection (b)(1)-(3), is that the safe harbor is a defense to *sex* trafficking. Plaintiffs don't allege that sex trafficking is at issue here, and so the safe harbor is inapplicable.

Second, Wyndham argues that Plaintiffs' vicarious-liability claims fail because the Pennsylvania human-trafficking statute doesn't permit a civil-beneficiary claim unless it derives from sex trafficking. ECF 13, pp. 29-30; ECF 19, pp. 13-14. Plaintiffs' theory, however, isn't that Wyndham is liable for benefitting from the trafficking, but that Wyndham is *vicariously* liable because the Days Inn was an agent of Wyndham, and the *Days Inn* directly "participated in the human trafficking[.]" 18 Pa. C.S. § 3051(a)(1).[21]

Accordingly, for the same reasons the TVPRA claims survived in part, Plaintiffs' Pennsylvania human-trafficking statute claims survive in part. That is, the Court will not dismiss Mr. Robinson's claims against Milan, LLC,[22] and Mr.

---

[21] Beneficiary liability "is a separate consideration from" direct or vicarious (indirect) liability. *Doe*, 2025 WL 1119736, at *7. Indeed, a "plaintiff may allege that the defendant's *own* acts, omissions, and state of mind establish each element. This is known as direct beneficiary liability. Alternatively, a plaintiff may advance an agency theory that imputes the acts, omissions, and state of mind of an agent to the defendant; this is known as indirect beneficiary liability." *B.C. v. G6 Hosp. Prop. LLC*, No. 25-05057, 2025 WL 1837620, at *3 (W.D. Wash. July 3, 2025) (discussing TVPRA).

[22] There are some additional allegations pled under the Pennsylvania human-trafficking statute count that might, at first glance, suggest that Plaintiffs' claim against Milan, LLC survives based on forced labor and not just trafficking. For

Bhatia, but the Court will dismiss Ms. Timko's claims against them.  Likewise, as Plaintiffs' TVPRA vicarious-liability claims against Wyndham survived, so too do Plaintiffs' Pennsylvania claims.

## IV.    The RICO claims (Counts VI-VII).

Ms. Timko and Mr. Robinson allege that the Motel M defendants' actions violate the Racketeer Influenced and Corrupt Organizations Act (RICO).  ECF 1, ¶¶ 240-273.

"RICO imposes criminal and civil liability upon those who engage in certain 'prohibited activities.'  It provides civil remedies for 'any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962.'"  *Care One Mgmt. LLC v. United Healthcare Workers E.*, 43 F.4th 126, 135 (3d Cir. 2022) (cleaned up). "Section 1962[, in turn,] contains four separate subsections, each addressing a different problem."  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991).  At issue are two of them: Plaintiffs assert claims for violations of both Section 1962(c), for labor trafficking, and Section 1962(d), for conspiracy.  Each are addressed below.

### A.    The Section 1962(c) RICO claim (Count VI).

Section 1962(c) renders it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful

instance, Plaintiffs allege that "Defendants" used a mandatory hotel rent to extort Plaintiffs into working for Defendants; that "Defendants" committed fraud by hiring Plaintiffs under the table; and that "Defendants" coerced Plaintiffs with debt, prevented them from working enough to pay off the debt, and prevented them from working other jobs to pay off the debt.  ECF 1, ¶¶ 229-231.  But these allegations are group pled, and there are too many defendants, locations, and plaintiffs, to say with any certainty that they apply to Milan, LLC.

debt." 18 U.S.C. § 1962(c).  To state a Section 1962(c) claim, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to business or property." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 483 (3d Cir. 2015) (cleaned up).

The Motel M defendants challenge the third and fourth elements.  Specifically, they argue that Plaintiffs fail to allege any predicate "racketeering activity," much less the multiple predicate acts of racketeering activity necessary to establish a pattern.  ECF 24, p. 16.  While Plaintiffs allege individual predicate acts, the Court agrees that they don't allege a pattern.

"Racketeering activity" is defined expansively, and includes "any act which is indictable under . . . sections 1581-1592 (relating to peonage, slavery, and trafficking in persons)." 18 U.S.C. § 1961(1)(B).  A "pattern of racketeering activity," meanwhile, requires a showing that the defendant committed "at least two acts of racketeering activity" within a ten-year period.  18 U.S.C. § 1961(5).  "[E]ach individual defendant [must have] engaged in at least two predicate acts," "the racketeering predicates [must be] related, and . . . they [must] amount to or pose a threat of continued criminal activity."  *United States v. Bergrin*, 650 F.3d 257, 267, 270 (3d Cir. 2011) (cleaned up); *see also Hollis-Arrington v. PHH Mortg. Corp.*, 205 F. App'x 48, 54 (3d Cir. 2006) ("To plead a pattern of racketeering activity, [plaintiff] must aver not only that each defendant committed at least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity.").

While Plaintiffs' allegations of TVPRA liability make out a single predicate act for Milan, LLC, and Mr. Bhatia,[23] one predicate act doesn't make a pattern.  Plaintiffs

---

[23] *See Burrell v. Staff*, 60 F.4th 25, 41 (3d Cir. 2023) ("[F]or the same reason that plaintiffs have sufficiently alleged predicate TVPA venture liability as to [defendant], they have sufficiently alleged predicate RICO liability as to [defendant]."), *cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell*, 143 S. Ct. 2662 (2023).

suggest that the pattern consists of Ms. Timko's and Mr. Robinson's forced labor and trafficking, ECF 27, p. 9, as well as the larger "human trafficking scheme" involving the Motel M and the Days Inn, "encompass[ing] multiple victims, in multiple states, in multiple hotels, and at multiple different times[,]" ECF 1 ¶¶ 252-256; ECF 27, pp. 9-10, but neither cuts it. Two points on this.

First, Ms. Timko couldn't sustain her TVPRA claims against the Motel M defendants. As noted above, for a Section 1962(c) RICO claim, the predicate acts must be committed by all defendants in order to establish a pattern. Thus, Ms. Timko's failure to implicate the Motel M defendants means that conduct that involves her cannot count towards a pattern.

Second, the allegations of "other vulnerable individuals" working at the Motel M and Days Inn under a "similar debt arrangement[,]" ECF 1, ¶¶ 255-256, are far too generalized to create a pattern. While there isn't a heightened pleading standard at issue here, this type of generalized allegation still isn't enough. This is why there is a requirement for a RICO case statement—so all know the precise predicate acts, and the Court can determine whether there is a pattern, continuity, and relatedness—all necessary elements of a RICO claim. *See* W.D. Pa. LCvR 7.1(B); *see also Glessner v. Kenny*, 952 F.2d 702, 712 n.9 (3d Cir. 1991) ("Courts may consider the RICO case statement in assessing whether plaintiffs' RICO claims should be dismissed.") (overruled on other grounds). Compounding this problem is the complaint's disparate allegations and group pleading.

For example, Mr. Robinson's TVPRA claim against the Motel M and Mr. Bhatia survives based on trafficking, not forced labor, so even more abstract allegations of forced labor at the Motel M can't support a predicate TVPRA forced-labor claim.[24] As

_____

[24] The allegation that Mr. Bhatia subjected individuals at the Motel M to a debt arrangement like the Days Inn imposed would be fair game here since it is pled under the RICO count. ECF 1, ¶¶ 255-256. Still, it doesn't close the gap because the Court must speculate as to the meaning of "debt arrangement." It could refer, as the Court

for allegations that other people worked at the Days Inn, Plaintiffs allege that Mr. Singh and Mr. Bhatia had an agreement to trade individuals for labor, that they did trade Mr. Robinson, and that Mr. Robinson witnessed other individuals working at the Days Inn under a debt arrangement like that to which Mr. Singh subjected him and Ms. Timko.  ECF 1, ¶¶ 25, 88-89, 255.  It is just speculation, though, that Milan, LLC, and Mr. Bhatia trafficked some of those individuals—particularly since "Mr. Singh [himself] also recruited other homeless individuals . . . before he recruited Ms. Timko."  *Id.* ¶ 254.  There is a "thin line between speculation and reasonable inferences[.]"  *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 474 (3d Cir. 1985).  The conclusion Plaintiffs need the Court to draw falls just on the wrong side of it.

The Court will therefore dismiss Plaintiffs' Section 1962(c) RICO claim against the Motel M defendants.  *See CC Ford Grp. W., LLC v. Johnson*, No. 22-4143, 2025 WL 1810206, at *10-11 (D.N.J. June 30, 2025) (dismissing Section 1962(c) claim against certain defendants for failure to allege two predicate acts committed by each defendant).

### B.    The Section 1962(d) RICO conspiracy claim (Count VII).

Section 1962(d), governing RICO conspiracy claims, provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  "To state a claim under § 1962(d), a plaintiff must allege that the members of the conspiracy had: (1) knowledge of the corrupt enterprise's activities and (2) agreement to facilitate those activities."  *Biros v. Snyder*, No. 23-297, 2025 WL 964099, at *10 (W.D. Pa. Mar. 31, 2025) (Colville, J.).

The Motel M defendants argue that if there is no Section 1962(c) claim, then there can be no Section 1962(d) conspiracy.  ECF 24, p. 18.  Not so.

interprets the phrase, to the payment structure, but that doesn't include the connection between the debt and the "subsequent threats [to 'keep working or else'] that amount to abuse of legal process or law[.]"  *Id.* ¶ 248.  In other words, the part missing is the one that makes it a predicate TVPRA forced labor violation.

"[A] violation of section 1962(c) [is] not a prerequisite to a violation of section 1962(d)." *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001).  Rather, "one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, *any* particular element." *Id.*  In other words, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Id.* at 538.

Thus, while the Court has found there isn't a pled pattern here for a Section 1962(c) claim against the Motel M defendants because Ms. Timko didn't implicate the Motel M defendants and the allegations of other victims are too generalized, that is irrelevant for purposes of a Section 1962(d) claim.  There is a pattern of at least two predicate acts by the Days Inn defendants (the forced labor involving Mr. Robinson and Ms. Timko), and there are allegations of knowledge and an agreement to facilitate by Milan, LLC, and Mr. Bhatia.  For example, the complaint alleges that Mr. Bhatia and Mr. Singh had an agreement to traffic people for forced labor.  ECF 1, ¶¶ 25, 85-86.

Accordingly, Plaintiffs' Section 1962(d) RICO conspiracy claim against Milan, LLC, and Mr. Bhatia will survive.

## V.    The Section 1981 claims (Count VIII).

Ms. Timko and Mr. Robinson assert intentional race discrimination claims against the Motel M defendants under 42 U.S.C. § 1981.  ECF 1, ¶¶ 274-283.

Section 1981 provides "[a]ll persons" with the right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a).  "To establish a discrimination claim under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) an

intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (cleaned up).

The Motel M defendants argue that Ms. Timko, who is not alleged to belong to a racial minority, has failed to establish standing for her claims, and that both Ms. Timko and Mr. Robinson have failed to allege that the Motel M defendants intentionally discriminated.  ECF 24, p. 19; ECF 28, pp. 10-11.  Because Plaintiffs fail to allege any discriminatory actions by the Motel M defendants, much less intent to discriminate, the Court agrees with the Motel M defendants and will dismiss the claims.

The only allegation in the entire complaint relating to racial discrimination and directed to the Motel M defendants is that the "Motel M employed Mr. Robinson but did not pay him like similarly-situated white employees."  ECF 1, ¶ 277.  For several reasons, this comes up short.  First, "it merely states in a conclusory fashion that those employees were 'similarly situated[,]'" the type of threadbare recital of the cause of action that "fail[s] to plausibly allege discriminatory intent based on comparator evidence."  *Purdy v. CIPPCO Inc.*, No. 24-5126, 2025 WL 1004359, at *3 (E.D. Pa. Apr. 2, 2025).  Second, it doesn't tie Milan, LLC, or Mr. Bhatia to the discriminatory action.  *See Stanley v. City of Pittsburgh*, No. 15-555, 2016 WL 3920477, at *2 (W.D. Pa. July 15, 2016) (Hornak, J.) ("Plaintiff must also plead that the particular defendant was personally involved in the discriminatory act" (collecting cases)).  And third, it is contradicted by the allegation that "Mr. Bhatia also recruited other vulnerable individuals and subjected them to the ***same or similar*** debt arrangement at Motel M."  ECF 1, ¶ 256 (emphasis added).  *See Morris v. Scheuer*, No. 22-82, 2023 WL 2088169, at *11 n.8 (W.D. Pa. Feb. 17, 2023) (Lanzillo, C.M.J.) (noting plaintiff's "conflicting allegations further undermine the validity of his . . . claim").

The Court will therefore grant the Motel M defendants' motion to dismiss Plaintiffs' Section 1981 claims.

## VI.        The wage-and-hour claims (Counts IX-XII).

Plaintiffs assert four counts of wage-and-hour claims against the Motel M defendants, alleging violations of the Fair Labor Standards Act (FLSA), the Pennsylvania Minimum Wage Act (PMWA), and the Pennsylvania Wage Payment and Collection Law (WPCL).  ECF 1, ¶¶ 284-339.[25]  The Court discusses each below.

---

[25] As a threshold argument, the Motel M defendants assert that the wage-and-hour claims should be dismissed because the complaint violates the Rule 8(a) pleading standard.  ECF 24, p. 20.  Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of [a] claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Complaints that violate Rule 8 are often referred to as 'shotgun pleadings.'"  *Cambridge Mut. Fire Ins. v. Stihl Inc.*, No. 22-5893, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023).  "[A]lthough there are several characteristics that can make a complaint a shotgun pleading, they all have in common one thing: failure to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"  *Id.* (cleaned up).

Plaintiffs' wage-and-hour claims have "some of the hallmarks of a shotgun pleading, [but are] not so vague or ambiguous that [they] fail[] to give [Defendants] notice of the claims against [them]."  *Fike v. Glob. Pharma Healthcare Priv., Ltd.*, 741 F. Supp. 3d 265, 274 (E.D. Pa. 2024).  The complaint separates the wage-and-hour claims into specific counts, specifies which plaintiffs bring which counts and which counts apply to which defendants, and there are "factual allegations specific to each claim under the related count . . . such that Defendants are generally put on notice of their alleged wrongdoing."  *Id.*  To be sure, the complaint is not a model of clarity.  But the Court does not find the wage-and-hour claims so poorly pleaded to have violated Rule 8(a); indeed, the Motel M defendants responded to the wage-and-hour claims with a motion to dismiss instead of a motion for a more definitive statement.  *See Patrick v. Equifax Info. Servs., LLC*, No. 23-4092, 2024 WL 2077036, at *5 (D.N.J. May 9, 2024); *see also Garrett*, 938 F.3d at 95 (defendants' brief "demonstrate[d] that it was possible to understand and engage with [plaintiff's] claims on their merits").  Instead, the Court addresses these issues, such as group pleading, in the context of its Rule 12(b)(6) analysis, as it has done with respect to Plaintiffs' other claims.

A.    The FLSA and PMWA claims (Counts IX, XI-XII).

Ms. Timko, Mr. Robinson, and Ms. Darnell bring claims for failure to pay overtime in violation of the FLSA and PMWA, and Ms. Timko and Mr. Robinson bring claims of failure to pay minimum wage under the PMWA.

"The FLSA and PMWA require employers to pay employees the minimum wage, plus overtime if the employee is non-exempt[,]" as well as "to compensate employees time and a half for any time worked in excess of forty hours in a workweek." *Jedlicka v. Simmons & Cos., Inc.*, No. 23-606, 2024 WL 98378, at *3-4 (W.D. Pa. Jan. 9, 2024) (Wiegand, J.) (citing 29 U.S.C. §§ 206, 207; 43 Pa. C.S. § 333.104).[26]  To state a minimum-wage claim, "a plaintiff must [allege] three elements: (1) the plaintiff was an employee; (2) the defendant was the plaintiff's employer; and (3) the defendant failed to pay the plaintiff the wage required . . . .  [And i]f a plaintiff seeks unpaid overtime wages, he or she must [also] sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours." *Beauregard v. Broadway Elec. Serv. Corp.*, No. 21-1600, 2022 WL 2293969, at *5 (W.D. Pa. June 24, 2022) (Stickman, J.) (cleaned up) (PMWA elements); *see also Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (FLSA elements).

The Motel M defendants argue that Plaintiffs fail to allege any basis for imposing personal liability on them.  ECF 24, pp. 21-23.  This argument focuses on the "first inquiry in most FLSA cases[,] . . . whether the plaintiff has alleged an actionable employer-employee relationship." *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014).

"The roles of employee and employer are broadly defined in the FLSA.  To 'employ' is defined as 'to suffer or permit to work.'  29 U.S.C. § 203(g).  An 'employee'

---

[26] "Generally, the FLSA and PMWA are analyzed under the same framework." *Jedlicka*, 2024 WL 98378, at *2.  Unless otherwise noted, the Court analyzes them together.

is 'any individual employed by an employer.' *Id.* § 203(e)(1). And an 'employer' can be either a business entity or an individual—it includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' *Id.* § 203(d)." *Xiao v. Sichuan Gourmet LLC*, No. 21-482, 2022 WL 819096, at *2 (W.D. Pa. Mar. 18, 2022) (Hornak, C.J.) (citations omitted).[27]

In practice, "[t]he standard to determine whether an entity is the 'employer' of a worker-plaintiff raising an FLSA [or PMWA] claim is whether that entity exercised 'significant control' over the worker. The Third Circuit has announced a nonexhaustive list of factors for determining whether an entity is an employer or joint employer of a given employee[,]" which captures both "direct" and "indirect" control. *Ewing v. First Energy Corp.*, No. 17-1573, 2018 WL 6715725, at *2 (W.D. Pa. Dec. 21, 2018) (Hornak, J.) (cleaned up). Under this "*Enterprise* test," courts ask "[d]oes the alleged employer have: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Id.* (quoting *In re Enter. Rent-A-Car Wage & Hour Empl. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012)). These factors are not to be "blindly applied[,]" and are to be joined by "consider[ation of] all the relevant evidence, including evidence that does not fall neatly within [the factors]." *In re Enter.*, 683 F.3d at 469 (cleaned up); *see also Savakus-Malone v. Piramal Critical Care, Inc.*, No. 18-5063, 2019 WL

---

[27] Similarly, the PMWA explains "employ[] includes to suffer or to permit to work[,]" 43 P.S. § 333.103(f); defines "employe[e]" as "any individual employed by an employer[,]" *id.* § 333.103(h); and defines "employer" as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe[e,]" *id.* § 333.103(g).

2897697, at *5 (E.D. Pa. July 3, 2019) (collecting cases discussing the "other circumstances which aided in the determination of employment statuses").[28]

The Court examines this employment-relationship element against each defendant below.

### 1. Only Mr. Robinson plausibly alleges FLSA and PMWA claims against Milan, LLC.

Plaintiffs' allegations against Milan, LLC are scant, but just enough at this stage for Mr. Robinson's claim to survive.

Setting aside the conclusory allegations that the Motel M employed Mr. Robinson, ECF 1, ¶¶ 286, 277, 318, 320, 327, Plaintiffs allege that Milan, LLC "owns and operates [the] Motel M," Mr. Robinson began working for the Motel M in June 2019, and Mr. Bhatia—as owner of Milan, LLC—agreed to pay Mr. Robinson "in cash and off-the-books." *Id.* ¶¶ 6, 82, 84.

In *Enterprise*-test terms, Plaintiffs allege that Milan, LLC had the authority to (and did) hire Mr. Robinson, and, through Mr. Bhatia, set his compensation. Joined with other indicia—Plaintiffs' allegations that Mr. Robinson worked on-site at the Motel M, and that Milan, LLC, owned the Motel M—Plaintiffs' allegations just barely "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Thompson*, 748 F.3d at 147 (cleaned up); *see Mackereth v. Kooma, Inc.*, No. 14-4824, 2015 WL 2337273, at *5 (E.D. Pa. May 14, 2015) (considering that plaintiffs worked at the addresses of alleged employers). So Mr.

---

[28] The Third Circuit has developed several multi-factor tests to analyze, under different circumstances, whether an employer relationship exists. *See Johnson v. Nat'l Collegiate Athletic Ass'n*, 108 F.4th 163, 177 (3d Cir. 2024) (noting tests for whether individuals are employees or independent contractors, whether entities are joint employers, and developing test for whether student-athletes are employees). Though no party cited to it, the Court believes the *Enterprise* test is most appropriate here, and, indeed, the Third Circuit recently applied *Enterprise* to joint-employer claims in the forced-prison-labor context. *Burrell*, 60 F.4th at 46.

Robinson's FLSA and PMWA claims against Milan, LLC, survive the Motel M defendants' challenge.

Neither Ms. Timko nor Ms. Darnell, however, are alleged to have worked at the Motel M, or otherwise to have had any interaction at all with Milan, LLC. Their FLSA/PMWA claims against Milan, LLC, will thus fail.

### 2. Only Mr. Robinson plausibly alleges FLSA and PMWA claims against Mr. Bhatia.

"Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA." *Thompson*, 748 F.3d at 153. The question is whether the individual defendant "exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *Id.* (cleaned up). "The focus is on the totality of the circumstances rather than on technical concepts of the employment relationship[,]" *id.* at 154, and the *Enterprise* factors assist with this analysis. *Xiao*, 2022 WL 819096, at *5.

Plaintiffs allege that Mr. Bhatia "owned and operated" the Motel M, and that Mr. Bhatia is a co-owner of the Days Inn. ECF 1, ¶¶ 24, 84, 253 & pp. 22-23 (unnumbered paragraph under heading "PARTICIPATION THEORY"). "Providing titles or positions, without more, however, is insufficient to demonstrate control." *Xiao*, 2022 WL 819096, at *6; *see also Sida v. Pintura Constr. LLC*, No. 18-806, 2018 WL 6258604, at *2 (W.D. Pa. Nov. 30, 2018) (Hornak, J.) ("[C]ommon ownership or membership in a common enterprise is insufficient to yield liability under the FLSA." (cleaned up)).

So what else is alleged? Plaintiffs allege that at the Motel M, Mr. Bhatia "agreed to pay Mr. Robinson in cash and off-the-books[,]" and that Mr. Bhatia "traded" Mr. Robinson to the Days Inn. ECF 1, ¶¶ 84, 88. Considering the totality of

the circumstances, Mr. Robinson plausibly alleges that Mr. Bhatia was a joint employer of Mr. Robinson with Milan, LLC. Plaintiffs' allegations pertaining to Mr. Bhatia and the Days Inn, however, are far more tenuous. Plaintiffs allege that Mr. Bhatia was a co-owner of the Days Inn, and that he "traded" Mr. Robinson to the Days Inn. ECF 1, ¶¶ 88, 253. Even if the Court charitably assumes that the "trading" counts as hiring authority at the *Days Inn*, that's only one *Enterprise* test factor. *See Savakus-Malone*, 2019 WL 2897697, at *5 (holding no joint employer relationship pled where only one *Enterprise* factor weighed in plaintiff's favor). There isn't much else to bolster Plaintiffs' position. At most, Plaintiffs allege that Mr. Bhatia hired a "surveyor or inspector" to check on the Days Inn, ECF 1, ¶ 170, and that Mr. Bhatia is alleged to have communicated with Mr. Singh about hiring vulnerable individuals under a debt arrangement, *id.* ¶ 85. But neither shed any light on whether Mr. Bhatia and the Days Inn defendants "share[d] or co-determine[d] those matters governing essential terms and conditions of employment" at the Days Inn. *In re Enter.*, 683 F.3d at 468, 470.

Plaintiffs don't offer any serious argument otherwise. They assert, without citation to authority, that Mr. Bhatia remained Mr. Robinson's employer at the Days Inn. ECF 27, p. 15. And they argue that Mr. Robinson's labor allowed the Days Inn to reduce the workload of its legitimate employees, meaning the Motel M defendants "acted 'directly or indirectly' in the" Days Inn's interest. ECF 27, p. 15. Maybe, but that says nothing about what really matters—whether the Motel M defendants had "significant control" or supervisory authority over any Plaintiff at the Days Inn.

Accordingly, Mr. Robinson's FLSA/PMWA claims against Mr. Bhatia will remain, but will be limited to the time Mr. Robinson worked at Motel M. Without any allegations pertaining to Ms. Timko or Ms. Darnell, their FLSA/PMWA claims against Mr. Bhatia will be dismissed.

**B.    The WPCL claims (Count X).**

Rounding out the wage-and-hour claims are Ms. Timko's, Mr. Robinson's, and Ms. Darnell's claims for failure to pay overtime and straight time in violation of the WPCL.  "The [WPCL] provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Comput. Corp.*, 696 A.2d 148, 150 (Pa. 1997).  "Thus, to state a plausible WPCL claim, a plaintiff employee must allege facts demonstrating that he or she was deprived of compensation the employee has earned according to the terms of his or her contract with the defendant employer." *Thompson v. IntelyCare, Inc.*, No. 22-1599, 2025 WL 745224, at *6 (W.D. Pa. Mar. 7, 2025) (Colville, J.); *see also Minehan v. McDowell*, No. 21-5314, 2023 WL 5432508, at *15 (E.D. Pa. Aug. 22, 2023) ("To prevail on a WPCL claim, a plaintiff must establish: (1) the entity that withheld wages from the plaintiff is an 'employer' under the WPCL; (2) the plaintiff is contractually owed the withheld wages; and (3) the employer, in fact, withheld the contractually owed wages."), *aff'd*, No. 23-2737, 2024 WL 4403873 (3d Cir. Oct. 4, 2024).

The Motel M defendants argue that Plaintiffs fail to allege that the Motel M defendants employed anyone in Pennsylvania.  ECF 24, p. 23; ECF 28, p. 13.  The Court agrees.

The WPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  43 P.S. § 260.2a.  "[T]he existence of an employer-employee relationship under the WPCL centers on whether the employer not only controls the result of the work but directs the manner in which the work is accomplished." *Gladstone Tech., Partners, LLC v. Dahl*, 222 F. Supp. 3d 432, 439 (E.D. Pa. 2016) (citing *Urbano v. STAT Courier, Inc.*, 878 A.2d 58, 62 (Pa. Super. Ct. 2005)).  The WPCL also "imposes personal liability on high-ranking corporate officers for

-44-

employees' unpaid wages." *Schneider v. IT Factor Prods.*, No. 13-5970, 2013 WL 6476555, at *5 (E.D. Pa. Dec. 10, 2013). "To hold an 'agent or officer' personally liable for unpaid wages, evidence of an active role in decision making is required." *Id.* (cleaned up).

As explained in the above discussion relating to the FLSA and PMWA, Plaintiffs fail to allege any facts that the Motel M defendants controlled any aspect of Plaintiffs' employment at the Days Inn. And because the Motel M is in West Virginia, Milan, LLC is a West Virginia company, and Mr. Robinson wasn't alleged to have resided in Pennsylvania, any allegations pertaining to Mr. Robinson there aren't relevant.

Accordingly, the Court will dismiss Plaintiffs' WPCL claims.

## VII.        The debt-collection claims (Count XIII).

Ms. Timko and Mr. Robinson assert claims of unfair and deceptive debt collection against the Motel M defendants under the Fair Debt Collection Practices Act (FDCPA) and Pennsylvania Fair Credit Extension Uniformity Act (FCEUA). ECF 1, ¶¶ 340-351.

"The FDCPA prohibits debt collectors from engaging in certain practices deemed harmful to consumers[,]" *Garcia v. Navy Fed. Credit Union*, No. 22-1090, 2023 WL 2058054, at *3 (W.D. Pa. Feb. 16, 2023) (Stickman, J.), including the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e. Likewise, "[t]he FCEUA prohibits 'unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts[,]'" *Broadhurst v. CitiMortgage, Inc.*, 838 F. App'x 671, 675 (3d Cir. 2020) (quoting 73 P.S. § 2270.2), including violations of the FDCPA by "debt collector[s,]" 73 P.S. § 2270.4(a), as well as "creditor[s'] . . . use [of] any false, deceptive

or misleading representation or means in connection with the collection of any debt." *Id.* § 2270.4(b)(5).

The Motel M defendants argue that Plaintiffs fail to allege that the Motel M defendants engaged in any conduct prohibited by the statutes. ECF 24, pp. 24-25. The Court agrees.

Plaintiffs don't allege that Ms. Timko worked at the Motel M, or that any of the Motel M defendants collected any debt at the Days Inn. To the extent that Plaintiffs allege debt-collection actions at the Days Inn by "Defendants" generally, *see, e.g.*, ECF 1, ¶ 183, or in the passive voice, *see, e.g.*, *id.* ¶ 347, without more, those allegations are insufficient, since any inference that they apply to the Motel M defendants is undercut by the rest of the allegations specifically recounting Mr. Singh's use of the debt. *See Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683-84 (E.D. Pa. 2024) ("Although there is no categorical prohibition against group pleading, a complaint is insufficient where there is genuine uncertainty regarding who is responsible for what, such as when multiple defendants are accused of acting jointly." (cleaned up)).[29]

The Court will thus dismiss Plaintiffs' FDCPA and FCEUA claims against all of the Motel M defendants.

---

[29] Plus, Plaintiffs' allegations pertaining to Mr. Bhatia and Mr. Robinson at the Motel M don't count. An FCEUA "creditor" claim applies to "debt collection activities of creditors in [Pennsylvania,]" and the Motel M is in West Virginia. 73 P.S. § 2270.4(b). And while the allegations might have sufficed for a "debt collector" claim under the FDCPA or FCEUA subsection (a), a "debt collector" under either statute can't be collecting its own debts. *See Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) ("Specifically excluded from the [FDCPA's] definition's reach [of 'debt collector'] are, in relevant part, a creditor's officers and employees collecting debts for the creditor, . . . [and] an entity collecting a debt it originated[.]" (citing 15 U.S.C. § 1692a(6)); *see also* 73 P.S. § 2270.3 (excluding from definition of "debt collector" "[a]ny officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor[,]" and any person collecting "a debt which was originated by such person").

## VIII.        The equitable claims (Count XIV).

Lastly, Ms. Timko, Mr. Robinson, and Ms. Darnell allege common-law quantum-meruit and unjust-enrichment claims against all Defendants, which all moving Defendants seek to dismiss.  ECF 1, ¶¶ 352-356.

"Pennsylvania . . . does not consider unjust enrichment to be either an action in tort or contract.  Unjust enrichment, rather, an equitable remedy and synonym for *quantum meruit*, is a form of restitution." *Powers v. Lycoming Engines*, 328 F. App'x 121, 126 (3d Cir. 2009) (cleaned up); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018) ("A claim for damages in *quantum meruit* is fundamentally an equitable claim of unjust enrichment[.]").  "A plaintiff must [thus] prove the same elements for quantum meruit and unjust enrichment." *Stanford Health Care v. Highmark Blue Cross Blue Shield*, No. 23-1732, 2024 WL 624036, at *4 (W.D. Pa. Feb. 14, 2024) (Horan, J.). Under Pennsylvania law, those elements "are (1) conferring a benefit on [a] defendant; (2) [the] defendant's knowledge of the benefit; and (3) circumstances are such that [the] defendant's retention of that benefit would be unjust." *Burrell*, 60 F.4th at 50.

The Motel M defendants argue that Plaintiffs' unjust-enrichment claims fail because they do not meet the Rule 8 pleading standard.  ECF 24, p. 25; ECF 13, pp. 30-31.  The Court agrees.

Plaintiffs' equitable claims, in total, account for five numbered paragraphs and a request-for-relief clause in a 48-page, 356-paragraph, complaint.  ECF 1, ¶¶ 352-356.  Four of those paragraphs are no more than "[t]hreadbare recitals of the elements of a cause of action" properly discarded on a motion-to-dismiss challenge. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Xiao*, 2022 WL 819096, at *6 (striking "boilerplate allegations").  What's left is a single paragraph, incorporating all prior allegations by reference.  ECF 1, ¶ 352.  "[T]hose who incorporate prior pleadings by

reference must do so with a degree of specificity and clarity which would enable a responding party to easily determine the nature and extent of the incorporation." *Miles v. FOP Lodge #5*, No. 17-438, 2019 WL 13275789, at *1 (E.D. Pa. Jan. 7, 2019) (cleaned up). Plaintiffs' execution instead "force[s the Court] to search through [the] complaint like a pig hunting for truffles." *McGlinchey v. S.C.I. Fayette*, No. 18-14, 2018 WL 6790167, at *2 (W.D. Pa. Dec. 26, 2018) (Eddy, C.M.J.). A few other characteristics of Plaintiffs' complaint makes this exercise even harder: the equitable claims are brought by "all" Plaintiffs against "all" Defendants; some Plaintiffs seem to "lack any allegations against some combination of Defendants[,]" *Jefferson v. Abbington Jefferson Hosp.*, No. 24-4762, 2025 WL 1194479, at *2 (E.D. Pa. Apr. 24, 2025); and, as noted many times, Plaintiffs are partial to group pleading.

The Court will thus dismiss Plaintiffs' equitable claims in their entirety for failing to conform with Rule 8(a).

## IX.    Plaintiffs may amend their complaint.

The Court finds that amendment would not be inequitable or futile, and so all dismissals will be without prejudice to Plaintiffs amending their complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Any amended complaint shall ensure that generalized and group-pled allegations are eliminated.

## CONCLUSION

For these reasons, the Court will grant in part and deny in part Wyndham's motion to dismiss (ECF 13), and the Motel M defendants' motion to dismiss (ECF 23). A separate order follows.


Dated: July 30, 2025                          BY THE COURT:


                                              */s/ J. Nicholas Ranjan*
                                              United States District Judge

-48-